AT THE

### ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1913.

---

ROSE FINER, Respondent, v. CECELIA NICHOLS,
Appellant.

### St. Louis Court of Appeals, June 3, 1913.

1. **LANDLORD AND TENANT: Repairs: Liability of Landlord for Injuries to Tenant.** The landlord is not bound to keep rented premises in repair, in the absence of an agreement to do so, made at the time of the letting, or thereafter on a new and sufficient consideration, and is not liable to the tenant for injuries sustained by reason of such failure to repair.

2. **APPELLATE PRACTICE: Former Decision: Law of Case.** A determination by an appellate court that the petition and evidence are sufficient to warrant a recovery by plaintiff is *res adjudicata* on a subsequent appeal after retrial, if the petition and evidence presented on both appeals are the same.

3. **LANDLORD AND TENANT: Repairs: Liability of Landlord for Injury to Tenant.** A landlord who is under no obligation to make repairs to rented premises, but who voluntarily undertakes to do so, is liable for injury to the tenant resulting from the negligent manner in which the repairs are made.

4. **———: ———: ———: Sufficiency of Petition.** In an action against a landlord for injuries sustained by the tenant as a result of negligence of the landlord in repairing rented premises, the petition alleged that the floor of a privy on the premises was in a dangerous condition; that the landlord undertook to repair the same; that, in making the repair, he negligently failed to remove the flooring, which was already decayed and rotten and of insufficient thickness and quality, and

negligently repaired the same by nailing down said decayed and rotten boards; that, upon plaintiff's entering the privy, after such repair was made, one of said decayed and rotten boards broke beneath her, causing her to fall and receive injuries. *Held*, that the petition, when liberally construed, stated a cause of action on the theory that defendant, having voluntarily undertaken to make the repair, was liable for his failure to exercise ordinary care in doing so; the fact that the floor consisted of the same decayed and rotten boards prior to his undertaking being immaterial, since, having undertaken to make the repair, it was his duty to install a floor that would be reasonably safe.

5. PLEADING: Liberal Construction.    Under Sec. 1831, R. S. 1909, it is the duty of courts, in construing a pleading for the purpose of determining its effect, to construe its allegations liberally with a view to substantial justice between the parties.

6. ———: Petition: Liberal Construction.    A petition which is not challenged by demurrer and is first assailed after verdict is to be construed by allowing every implication and intendment of its language in favor of the pleader.

7. DAMAGES: Personal Injuries: Proximate Cause.    In an action for personal injuries, where it was shown that plaintiff was a strong, healthy woman before her injury and that certain conditions developed immediately thereafter, and that such conditions, though not the necessary result of the injury sustained, could be directly attributed thereto, the question of whether plaintiff should be awarded damages therefor was for the jury.

8. EVIDENCE: Impeaching Evidence: Subornation.    Evidence that a certain person had sought to suborn a witness to testify falsely for defendant was incompetent, in the absence of evidence that such a person was acting for defendant or with her knowledge or consent.

9. APPELLATE PRACTICE: Erroneous Admission of Evidence: Cure by Withdrawing Instruction.    Where there is other evidence tending to prove the fact sought to be established by evidence improperly admitted, the error of admitting such evidence can be rendered harmless by a plain, positive and direct instruction to the jury to disregard it.

10. ———: ———: ———.    A witness was permitted to testify that a certain person had sought to suborn her to testify falsely for defendant, without any evidence being introduced that such person was acting for defendant or with her knowledge or consent.    There was other evidence, however, that defendant herself had approached several witnesses with the view of having them testify favorably to her, for a consideration.    *Held*, that the error of admitting the evidence of the first witness was

Finer v. Nichols.

cured by an instruction in plain and pointed terms that the jury should not consider it for any purpose.

11. **VERDICT: Impeachment by Jurors.** It is against public policy to permit the members of a jury who concur in a verdict to assail or impeach it by affidavit or otherwise.

12. ————: **Quotient Verdict.** Jurors may compute the average of their respective individual judgments, when trying to arrive at the amount of a verdict, without being guilty of misconduct, provided they do not agree in advance that they will be bound by the result of such computation; but if the jurors make such an agreement and abide by it and cease to deliberate, such conduct vitiates the verdict.

13. **APPELLATE PRACTICE: Verdict: Impeachment: Conclusiveness of Trial Court's Finding.** Where three dissenting jurors made affidavits that the verdict concurred in by the other nine jurors was a quotient verdict, and one of the jurors who concurred in the verdict made an affidavit denying that it was a quotient verdict, *held* that, conceding but not deciding that it was competent for the three dissenting jurors to impeach the verdict, the finding of the trial court that the verdict was not a quotient one was conclusive, on appeal.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

*Vital W. Garesche* and *Alexander R. Russell* for appellant.

(1) The pleading and evidence failed to show a right of plaintiff to a verdict. Finer v. Nichols, 158 Mo. App. 539; Coggs v. Bernard, 2 Ld. Raymond, 909; Roberts v. Cottey, 100 Mo. App. 500; Little v. McAdaras, 38 Mo. App. 187; Glenn v. Hill, 210 Mo. 291; Potter v. Hourigan, 124 N. W. 884; Lipschitz v. Rapaport, 133 N. T. Supp. 385; Rhodes v. Seidel, 102 N. W. 1025; Wynne v. Haight, 50 N. Y. Supp. 187; Galvin v. Beals, 187 Mass. 250; Mann v. Fuller, 66 Pac. 627; Gregor v. Cady, 82 Me. 131; Gill v. Middleton, 105 Mass. 477; Callahan v. Loughran, 102 Cal. 476; Carlon v. Bank, 118 N. W. 334; Blumental v. Prescott, 75 N. Y. Supp. 710; 2 Underhill Landlord & Tenant, 864; 24 Cyc.

1116; 18 Am. & Eng. Ency. of Law (2 Ed.), 239; 2 Kent Com. 570. (2) It is the duty of plaintiff to show that the injuries for which she seeks compensation resulted directly from the injury sustained. Young v. Railroad, 113 Mo. App. 640; Werner v. Railroad, 178 Mo. 125; Smart v. Kansas City, 91 Mo. App. 586; Wilbur v. Railroad, 110 Mo. App. 689. (3) Plaintiff must specially plead such injuries as are merely consequential and not the natural and necessary results of her alleged injuries. Thompson v. Railroad, 111 Mo. App. 476. (4) Evidence of repairs made subsequent to the alleged injury to plaintiff is inadmissible. Schloemer v. Transit Co., 204 Mo. 117; Brennan v. St. Louis, 92 Mo. 488; Alcorn v. Railroad, 108 Mo. 90; Railroad v. Hawthorne, 144 U. S. 202; Bailey v. Kansas City, 189 Mo. 510. (5) A witness cannot be impeached by showing that he attempted to suborn witnesses, unless a foundation is laid therefor in his cross-examination, and the error in receiving such testimony is not cured by instructing the jury to disregard it. Hoagland v. Modern Woodmen, 157 Mo. App. 15; Bates v. Holliday, 31 Mo. App. 162; Gutzweiler's Adm'r v. Lackman, 39 Mo. 100; State v. Rothschild, 69 Mo. 55; Meyer v. Lewis, 43 Mo. App. 417; Mueller v. Wolff, 56 Mo. App. 40. (6) An instruction should not submit to the jury undisputed facts, nor assume the truth of disputed facts. Windson v. Railroad, 45 Mo. App. 129; Coffey v. Carthage, 186 Mo. 583. (7) Where injuries are not shown to be the direct and proximate results of the alleged negligence, they should not be submitted to the jury as an element of damages. Smart v. Kansas City, 91 Mo. App. 582; Young v. Railroad, 113 Mo. 640. (8) The court, when requested by defendant, should instruct the jury on the whole question of defendant's liability. Clippard v. Transit Co., 202 Mo. 448. (9) Where defendant introduces evidence on a particular issue, it is error for the court to ignore such issue in instructing the jury or to refuse an instruction requested by de-

fendant submitting such issue to the jury. Phelan v. Paving Co., 115 Mo. App. 433; Clark v. Hammerle, 27 Mo. 55; Sawyer v. Railroad, 37 Mo. 240; State v. McKenzie, 102 Mo. 620; Griffith v. Railroad, 45 Mo. App. 574; Schaaf v. Fries, 77 Mo. App. 346; Galbreath v. Carnes, 91 Mo. App. 512. (10) A quotient verdict agreed upon in advance is ground for a new trial; and the incompetency of members of the jury to impeach the verdict is waived unless objected to. Winn v. Reed, 61 Mo. 621; Milburn v. Robinson, 132 Mo. App. 198.

*Montague Punch* for respondent.

(1) The pleadings and evidence establish a clear right of plaintiff to a verdict. (a) While there is no obligation on a landlord to keep premises in repair, unless he has expressly contracted to do so, yet if he makes repairs, and the same are negligently made, he is liable in damages to the tenant. Finer v. Nichols, 158 Mo. App. 539; Glenn v. Hill, 210 Mo. 291; Little v. McAdaras, 29 Mo. App. 332, 38 Mo. App. 187; LaBrasca v. Hinchman, 79 Atl. 885; Good v. Von Hemert, 131 N. W. 466; Gill v. Middleton, 105 Mass. 477; Tuttle v. Gilbert, 145 Mass. 169; Carlon v. Bank, 118 N. W. 334, 124 N. W. 91; Callahan v. Loughran, 102 Cal. 476; Gregor v. Cady, 82 Maine, 131, 19 Atl. 108; Martin v. Richards, 155 Mass. 381, 29 N. E. 591; Blumenthal v. Prescott, 70 N. Y. App. Div. 560; Glickauf v. Maurer, 75 Ill. 287, 91; Evans v. Murphy, 40 Atl. 109; Walker v. Swayzer, 3 Abb. Pr. 138; 2 Underhill on Landlord and Tenant, 864, 865; 24 Cyc. 1116, 1117; 18 Am. & Eng. Ency. of Law (2 Ed.), 236; 2 Kent's Com. (14 Ed.), 570. (b) How the defective condition of the closet floor caused the board in the floor to break was matter of proof, not of pleading. Galob v. Pasinsky, 70 N. E. 983. (c) When the appellate court remands a cause on the identical petition, it necessarily decides that the petition states a cause of action, and the matter is *res adjudicata,* and not reviewable on a second appeal,

even had it been erroneously decided on the first appeal. Crecilius v. Bierman, 68 Mo. App. 34; Carey v. West, 165 Mo. 452; Gordon v. Burris, 153 Mo. 223; Kerr v. Cusembary, 69 Mo. App. 221, 23; Bank v. Woesten, 176 Mo. 49; Leeser v. Boekhoff, 38 Mo. App. 445. (2) Plaintiff abundantly proved that her injuries resulted directly from the injury sustained. (3) Error in the reception of irrelevant evidence is cured by the withdrawal of the evidence by instruction, when there is nothing to show that it exerted a harmful effect on the jury. Larimore v. Railroad, 65 Mo. App. 167; Clark v. Hill, 69 Mo. App. 541; O'Mellia v. Railroad, 115 Mo. 205; Northrop v. Diggs, 146 Mo. App. 145. (4) If there is any rule of law more firmly established in this State than any other, it is that it is against public policy to allow jurymen to impeach their own verdict. Misconduct on the part of the jury cannot be proven by affidavits of the jurymen. Affidavits of jurors in support of their verdict may be considered, while their own evidence impeaching it must be rejected. Meisch v. Sippy, 102 Mo. App. 567; McCormick v. City of Monroe, 64 Mo. App. 202; Clark v. Famous Company, 16 Mo. App. 467; Jobe's Admr. v. Weaver, 77 Mo. App. 671; McMurdock v. Rumberlin, 23 Mo. App. 528; Winn v. Reed, 61 Mo. App. 626; State v. Gage Bros., 52 Mo. App. 470; Sawyer v. Railroad, 37 Mo. 263; State v. Fox, 79 Mo. 112; State v. Dunn, 80 Mo. 694; State v. Cooper, 85 Mo. 260; State v. Rush, 95 Mo. 199; Proffer v. Miller, 69 Mo. App. 507. (5) If the amount named by each juror is in the nature of a proposition, and there is no previous agreement to abide by the average amount, but the average amount is finally agreed on by the entire jury as their verdict, there would be nothing wrong in this. Such a verdict would be the deliberate judgment of the entire jury which satisfies the law. Fields v. Railroad, 80 Mo. App. 1; Kolb v. Transit Co., 102 Mo. App. 151; Jobe v. Weaver, 77 Mo. App. 666.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of personal injuries received through the alleged negligence of defendant. Plaintiff recovered, and defendant prosecutes the appeal.

Plaintiff, a married lady, together with her husband, was the tenant of defendant of a certain dwelling and appurtenances thereto in the city of St. Louis, at the time of her injury. The tenancy was from month to month, under a verbal arrangement, and no special agreement for repairs appears in the case. There was situate on the premises, as appurtenant thereto, a privy, the floor of which had become defective and dangerous because the boards therein were old, worn, and decayed. It appears plaintiff complained of the condition to defendant, and requested that the floor be repaired and rendered safe for use. Defendant acquiesced, and promised that the repairs should be made. The evidence tends to prove that, a few days thereafter, defendant, who also is a lady, undertook to make the repairs, and sent a man to the premises for the purpose. Instead of removing the old floor and laying a new one, defendant's carpenter merely drove some nails into the old and decayed boards, to the end of fastening them in place. After this was done, defendant informed plaintiff the privy floor had been repaired and was safe for use. Thereafter, upon plaintiff's entering the privy, one of the old and decayed boards so utilized in the repair broke under her weight and precipitated her forward with such force as to inflict severe and permanent injuries.

The petition states the facts substantially as above detailed, and it is urged that it reveals no cause of action against defendant. Indeed, though the evidence tends to prove the facts stated, it is argued too that no recovery should be allowed thereon.

There can be no doubt that the landlord is not bound to keep the leased premises in repair, in the absence of an agreement to do so, made at the time of the

letting, or thereafter upon a new and sufficient consideration. This being true, an action may not be maintained on account of an injury resulting to the tenant or a member of his family from the mere failure of the landlord to repair the leased premises, for the reason no obligation resting on the landlord is breached by such omission. But, be this as it may, the suit proceeds on another and distinct theory, for it is alleged, and the evidence tends to prove, that, though no obligation whatever rested upon defendant in that behalf, she nevertheless voluntarily undertook to make the repairs and caused her carpenter to do so.

The identical case was here on a former occasion and we so declared the law. Furthermore, we then said: ''It is averred in the petition, and the evidence tends to prove, that, in repairing the floor of the privy, this carpenter performed the task in such a negligent manner as to render it unsafe, and that the injury to plaintiff resulted from the negligent manner in which the repair was performed.'' [See Finer v. Nichols, 158 Mo. App. 539, 544, 545, 138 S. W. 889, 891.] In so declaring the law of the case, we, of course spoke in general terms, for, indeed, the judgment was reversed and the cause remanded there on another and distinct ground, which is wholly unimportant at this time. Because it may be inferred from the general language employed in that opinion that the negligence essential to afford a right of recovery in this class of cases should be of that active and affirmative character as by a malfeasance in performing the manual task of repair which operates to render the condition unsafe, it is now argued that both the petition fails to state, and the evidence to prove, a cause of action under that rule. The same petition and the same evidence were before us on the occasion referred to, and, though we used general language in disposing of the question, as is usual, the precise phase of the matter now under review was fully considered by the court, and is *res adjudicata* so far as

this case is concerned. [See Little v. McAdaras, 38 Mo. App. 187, 190.] However, as the argument is pressed upon us with such earnestness, we will examine it more extensively, as was done in the case last cited, on the second appeal. To this end, we shall copy here relevant excerpts from the petition and minutely point out the reasons that influenced the judgment of the court, expressed in a more general way on the former review.

After stating that plaintiff and her husband occupied the premises numbered 1247 Morgan street, St. Louis, as tenants of defendant from month to month under a verbal letting, the essential averments of the petition proceed as follows: "That situated on and being part of the said premises there was a certain outhouse or privy on said premises that had become unsafe and dangerous for use, the boards of the flooring of the same immediately and directly over the dung vault of said privy being loose, decayed, rotten, and not nailed down; that said defendant did thereafter, to-wit, on the —— day of June, 1902, attempt to repair the said privy, and did in fact on said—day of June, 1902, repair the same; that on the 18th day of June, 1902, plaintiff entered the said privy to use the same; that when and after the said plaintiff had entered the privy aforesaid, the floor of the same broke and gave way with her, one of the boards of said floor breaking under and beneath her, plaintiff's weight, causing the leg of said plaintiff to dip its length into the full dung vault of said privy and causing the right side of said plaintiff to strike violently against the side of said privy, thereby bruising and injuring her, said plaintiff's body, and thereby so shocking and injuring her physical and nervous system that she, said plaintiff, has, ever since said injuries aforesaid, been under the care of physicians, and has ever since her said injuries suffered great and severe pain in body and anguish of mind, and has ever since said injuries been unable to get around and about her home without great effort and pain."

The petition then specially alleges that plaintiff suffered a miscarriage as a result of her injury, and as a direct and proximate result of such injuries had suffered three other miscarriages and her general health had become and was permanently injured and impaired.

The negligence of the defendant is thus alleged: "And plaintiff alleges that the injuries of said plaintiff as aforesaid alleged and set out in her said petition were the direct and proximate result of the negligence of said defendant, her agent, servant and employee in repairing said privy, and that such negligence on the part of said defendant, her agent, servant, and employee in repairing said privy consisted in this, to-wit: That said defendant, her agent, servant and employee, negligently and carelessly failed to remove the flooring of said privy, which plaintiff states was already decayed and rotten and of insufficient thickness and insufficient quality of lumber, and in negligently, carelessly, and in an unworkmanlike manner repairing the same by only nailing down said decayed and rotten boards of said privy floor."

It is to be said that the petition is not a model of good pleading. The allegation concerning the fact that defendant utilized and employed the decayed and rotten boards of the old floor in making the repair, and which, it appears, occasioned plaintiff's injury through breaking under her weight, is not as definite and certain as it were possible to draft it. But in the circumstances of the case, it is obviously sufficient after verdict. The petition was not challenged by demurrer, neither is there a motion to make it more definite and certain before us. By the statute we are commanded that, in the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed with a view to substantial justice between the parties. [See Sec. 1831, R. S. 1909.] Moreover, a petition when not challenged by demurrer

and first assailed after verdict, as here, is to be construed by allowing every implication and intendment of its language in favor of the pleader and through utilizing in aid of it every inference of fact that may be fairly deduced therefrom, in favor of the verdict. Such is the established rule of decision. [See Munchow v. Munchow, 96 Mo. App. 553, 70 S. W. 386; Thomasson v. Merc. Ins. Co., 217 Mo. 485, 116 S. W. 1092.]

When the petition is liberally construed, with an eye single to the justice of the cause between the parties and by allowing its intendments in aid of the verdict, it is entirely clear that the breach of duty declared upon pertains to the matter of incorporating old, decayed, and defective boards in the floor of the privy. The fact averred, that plaintiff received her injury through one of those boards breaking beneath her weight, and the fact that defendant made the repair "by only nailing down said decayed and rotten boards of said privy floor," reveal the utilization of the insufficient boards to be the gravamen of the charge laid in the petition. It is clear enough that the parties so understood it, for the evidence introduced by plaintiff tended to prove such fact of using an insufficient board and the instructions on both sides treated the matter of incorporating the defective board in the privy floor as the issue in the case.

But the argument advanced goes to the effect that, as the petition avers the boards of the floors were, before the time of the repair, decayed and defective, and the floor dangerous, defendant may not be held to respond for negligence in not removing the dangerous condition. It is said that, if she promised to repair, the promise was without consideration, and therefore no cause of action arises on the breach of such a promise. as for a mere nonfeasance. The proposition so stated may be conceded to be true, but it is wholly beside the case, where the landlord actually enters upon the task of the repair, for, though he voluntarily undertakes it,

he is bound to exercise ordinary care in respect of the undertaking he so voluntarily embarks upon. It is true the question is one of misfeasance solely, but the misfeasance in judgment in every case relates to and is to be determined in co-ordination with the undertaking voluntarily assumed. Here it appears the landlord, being informed that the old floor was unsafe and dangerous, not only promised to repair it and went about the work to that end, but, after it was completed, told the plaintiff the floor was safe for use. The principle casting liability against defendant in such circumstances proceeds on the theory of a confidence induced and a trust reposed in respect to the performance of the full undertaking. Because of such confidence and trust, the law annexes thereto the obligation to exercise ordinary care with respect to the execution of the undertaking in its entirety.

The principle was deduced and applied first in the famous case of Coggs v. Bernard, 2 Ld. Raymond's Rep. 909, 919. In that case, it appeared the defendant undertook gratis to carry several hogsheads of brandy from one cellar and deposit them in another, and he did it so negligently and improvidently that one of the casks was staved and the brandy lost. "The K. B.," says Chancellor KENT (2 Kent's Com. (14 Ed.) 571), "held that the defendant was answerable for the damage on the ground of his neglect and carelessness, though he was not a common carrier, and though he was to have nothing for his trouble." Lord HOLT and the other justices, in the several opinions given, deduced the principle of liability from the fact of the confidence reposed and the breach of trust respecting it, for no one can doubt that the owner of the brandy expected the defendant to use reasonable care in its transportation, and his undertaking to perform the task, though voluntary, implied as much. It appearing that he breached this obligation through negligent performance, liability was therefore entailed as for a mis-

feasance.   Chancellor KENT, in commenting upon this case, says: "The court recognized the justness of the distinction that if a party undertakes to perform a work, and proceeds to the employment, he makes himself liable for any misfeasance in the course of that work.   But if he undertakes without consideration, *and does not proceed on the work,* no action will lie against him for the nonfeasance," unless in certain cases not necessary to mention.   [2 Kent's Com. (14 Ed.) 570, 572.]   (The italics are our own.)

There can be no doubt that a distinction exists between nonfeasance and misfeasance; that is, between a total omission to do an act which one gratuitously promises to do and a culpable negligence in the execution of it.   Chancellor KENT says: "It is conceded in the English as well as in the Roman law that if a party makes a gratuitous engagement, and actually enters upon the execution of the business, and does it amiss, through the want of due care, by which damage ensues to the other party, an action will lie for this misfeasance."   [2 Kent's Com. (14 Ed.) 570.]   Therefore, though it be true that liability is entailed upon this principle by a misfeasance only as for doing the act undertaken amiss, it is true, too, that such misfeasance is to be ascertained and determined with reference to the scope of the undertaking.   This being true, the mere fact that the floor was dangerous before and consisted of the same old and decayed boards prior to defendant's undertaking its repair, is without influence whatever; for the scope of the undertaking, though voluntarily assumed, was to install a new floor reasonably safe for the purpose contemplated, and the law implied the obligation to exercise ordinary care to that end.

For instance, in a like case before the Supreme Judicial Court of Massachusetts, it appeared the landlord undertook to repair the floor which was dangerous and employed defective material in so doing as here. The court said what the landlord undertook to do at

the request of the tenant was to make the floor safe and the law devolved the duty of ordinary care upon him with respect of that matter. Therefore, if the floor proved to be unsafe by reason of the want of ordinary care and skill on the part of defendant in workmanship *or in the selection of material used,* he might be held responsible in damages. [See Gill v. Middleton, 105 Mass. 477, 479, 7 Am. Rep. 548.]

So, too, the Supreme Court of New Jersey declared the principle entailed liability in a case where the landlord voluntarily undertook to repair the floor of a barn which was known to be dangerous at the time. In making the repair, the landlord employed the old beams which were decayed and defective under the floor, and thus failed to remove the former danger which attended the case, identically as the former danger incident to the old flooring attended this one. The floor collapsed because of the use of the old, decayed and defective beams, and injured the plaintiff's horse. The court nevertheless declared defendant liable as for a misfeasance in that he had failed, in using the old beams, to exercise ordinary care in respect of the full measure of his undertaking to install a floor reasonably safe.

In neither of the cases referred to did the court abate the influence of the principle one whit as if a mere nonfeasance appeared in failing to remove the prior dangerous condition. On the contrary, the voluntary undertaking to repair was treated as imposing a trust to exercise ordinary care commensurate with the full undertaking of installing a new floor reasonably safe. [See La Brasca v. Hinchman, 81 N. J. Law, 367, 79 Atl. 885. These cases are directly in point. See, also, to the same effect, a judgment on similar facts given by the Supreme Court of Nebraska in the case of Carlon v. Savings Bank of Omaha, 85 Neb. 659, 124 N. W. 91; also, Upham v. Head, 74 Kan. 17, 85 Pac. 1017; Gregor v. Cady, 82 Me. 131, 19 Atl. 108, 17 Am.

St. Rep. 466. For the general doctrine touching the subject, see 2 Underhill, Landlord and Tenant, Sec. 518; 24 Cyc. 1116, 1117.]

It is entirely clear that the petition states a cause of action, and the evidence abundantly supports it. [See Finer v. Nichols, 158 Mo. App. 539, 138 S. W. 889.]

Though plaintiff was a strong, healthy woman before the injury received from the fall, it appears she suffered a miscarriage a few hours thereafter, and subsequently suffered like misfortunes, all of which tended to impair her general health and nervous system. Subsequently she suffered from a severe bowel trouble which had not theretofore afflicted her. Among other things, she was permitted to recover for those injuries to her person and resulting pain therefrom. It is urged that this was error, for, it is said, neither the miscarriage nor the subsequent bowel and nervous trouble were necessary and natural results of the injury, and that they might have resulted from other causes as well. Indeed, this argument seems to go to the effect that a recovery of such consequential damages should not be allowed in the instant case bcause it was mere matter of conjecture. Upon investigating the testimony of the physicians, it appears otherwise. The expert testimony tends to prove that these identical troubles, though not necessary results from such an injury, may be directly attributed thereto, or, in other words, are traceable to the fall and the injury received by plaintiff across her abdomen. It appearing, as it does, that plaintiff was a strong, healthy woman before, and that these conditions developed immediately thereafter, and that such results are within the range of reasonable probabilities traceable to such an injury, it is entirely clear that the question with respect of them was for the jury. [See Seckinger v. Philibert, etc., Mfg. Co., 129 Mo. 590, 603, 606, 31 S. W. 957.]

The witness, Annie Waters, was permitted to give evidence, over the objection of defendant, that one Hubbard sought to suborn her to testify falsely in favor of defendant at the trial of this case. There is no evidence tending to prove that, though Hubbard sought to suborn Annie Waters, he was acting for defendant or with her knowledge or consent at the time. It is therefore argued the court erred in admitting the testimony of Annie Waters concerning the attempted subornation. Obviously this evidence was incompetent in the circumstances stated, but the court withdrew it by an instruction in plain and pointed terms, to the effect that the jury should not regard the testimony of Annie Waters concerning the attempt of Hubbard to suborn her.

It is said that, where incompetent evidence has been so received, the error may not be cured by an instruction to the jury to disregard it if such incompetent evidence is the only evidence bearing directly on the question at issue. [See Mueller v. Weitz, 56 Mo. App. 36.] However this may be, it is certainly competent to eliminate the baneful influence of admitting improper evidence by a plain, positive and direct instruction to the jury to disregard it, in those cases where there is other evidence tending to prove the question concerning which it is said the incompetent evidence admitted appeared to be prejudicial. In such cases, where there is cumulative testimony touching and tending to prove the fact sought to be established by the incompetent evidence received, it has ever been declared that the error involved in the admission of such incompetent evidence is removed from the case by a pointed instruction to the jury to disregard it. [See Stavinow v. Home Ins. Co., 43 Mo. App. 513; McGinnis v. Loring, 126 Mo. 404, 28 S. W. 750; O'Mellia v. Kansas City, St. J., etc., R. Co., 115 Mo. 205, 21 S. W. 503; Northrop v. Diggs, 146 Mo. App. 145, 123 S. W. 954.] Here three witnesses testified that defendant had approached them

with a view to influencing their testimony favorable to her for a consideration. Manifestly the testimony of Annie Waters objected to concerning an attempt on the part of Hubbard to suborn her was elicited with a view of establishing the fact that defendant was pursuing improper methods in order to obtain evidence. The testimony of the three other witnesses, which was received and is entirely competent, tended to reveal as much. This being true, it is entirely clear that the instruction cured the error with respect to the testimony of Annie Waters.

Under our constitutional provision, authorizing a verdict to be given in courts of record in civil cases by the concurrence of three-fourths of the jurors, plaintiff was awarded a verdict of $2,460, which was signed by nine of the panel. The three of the jurors who declined to concur in this verdict gave an affidavit thereafter, which was filed in support of the motion for a new trial, to the effect that the amount of the verdict was ascertained as a quotient of the sum total of the several amounts which the nine jurors had set down as that for which they favored a recovery. This affidavit sets forth that the nine jurors concurring in the verdict first agreed among themselves that each should set down on paper the amount for which he favored the verdict should be given, and that, after such amounts were ascertained, all should be added together and divided by nine with a view of yielding a quotient which should represent the amount of the verdict in which all would concur.

The rule is well established that it is against public policy to permit the members of a jury who concur in a verdict to impeach the result of their deliberations by affidavit, or otherwise assail the verdict. [See State v. Coupenhaver, 39 Mo. 430; State ex rel. v. Gage Bros., 52 Mo. App. 464, 470; Jobe's Adm'r v. Weaver, 77 Mo. App. 665.] But, be this as it may, here the verdict is not assailed by members of the jury who agreed

to it, but only those who dissented and declined to concur with their fellows. Touching the question as to whether or not it was competent for the three jurors who did not agree to the verdict to impeach it and reveal misconduct on the part of their fellow jurymen who agreed, we give no opinion, for the case may be properly disposed of on other grounds.

It may be conceded, for the purpose of review here, though not decided, that the affidavit signed by the three dissenting jurors was competent for the consideration of the court, and, when considered, that it revealed misconduct on the part of the jury sufficient to vitiate the verdict. Jurymen may compute the average of their respective individual judgments when trying to arrive at the amount of a verdict, without being guilty of misconduct; but when the verdict is shown to be what is known as a quotient verdict, as indicated in the affidavit referred to, it should be set aside for misconduct on the part of the jury—that is, if it was the result of an agreement in advance among the jurors. However, it is the fact that such an agreement is made in advance, and that the jurors abide by it and then cease to deliberate, that vitiates the verdict. If no such agreement appears and the jurors are at liberty to proceed as in unhampered deliberation, even after the casting up of figures and the division is made, then no misconduct sufficient to vitiate the result is revealed. [See Jobe's Adm'r v. Weaver, 77 Mo. App. 665; Fields v. Wabash R. Co., 80 Mo. App. 603, 608; Kolb v. St. Louis Transit Co., 102 Mo. App. 143, 150, 151, 76 S. W. 1050.] Here the court obviously found that no agreement was had between the jurors with respect to the matter. One of the jurors who concurred in the verdict made an affidavit, which was filed in support of it, to the effect that, though the jurors arrived at the amount of the verdict by the method suggested, no agreement touching the matter whatever was entered into among them. The court had both affidavits

before him, and found the issue of fact thus made in favor of plaintiff, as though there were no misconduct on the part of the jury. Therefore, the question is concluded here from review.

There are other points raised in the brief, and, though they have all been considered we do not regard them of sufficient merit to warrant discussion in the opinion. We see no error in the instruction given and none in the action of the court in refusing those requested by defendant and of which refusal complaint is made.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.