FRANK E. BARTLETT v. F. W. TAYLOR, Appellant.—No. 38517.—174 S. W. (2d) 844.

Division Two, November 1, 1943.

*Madden, Freeman & Madden* and *Alfred Kuraner* for appellant.

*Homer A. Cope, Cope & Hadsell,* and *Walter A. Raymond* for respondent.

BARRETT, C.—Frank E. Bartlett recovered a judgment of $1,500.00 against F. W. Taylor for personal injuries which Bartlett claims to have sustained by reason of Taylor's negligence, as a landlord, in voluntarily making repairs to the premises he formerly occupied as a tenant.

On appeal to the Kansas City Court of Appeals, 168 S. W. (2d) 168, two of the judges were of the view that Logsdon v. Central Development Assn., Inc., 233 Mo. App. 499, 123 S. W. (2d) 631; Davis v. Cities Service Oil Co. (Mo. App.), 131 S. W. (2d) 865 and Section 362 of the Restatement Of The Law Of Torts expressed the applicable and governing legal principles. In applying the principles the majority of the court thought the plaintiff's evidence sufficient to show that the defendant, in making the repairs, had made the premises more dangerous, as he was bound to do, but that the plaintiff had failed to show, as he was also bound to do, that the premises by reason of the repairs had a deceptive appearance of safety or that he did not know of the danger inherent in the more dangerous condition and, furthermore, that he was guilty of contributory negligence as a matter of law and for both these reasons the defendant's demurrers should have been sustained. The majority of the court, however, thought their decision in conflict with Kennedy v. Bressmer (Mo. App.), 154 S. W. (2d) 401 and certified the case to this court. One of the judges was of the view that the governing principles were not as stated by the majority but that the landlord's liability, after he volunteered to repair, was to be measured by whether he had exercised due care and made the repairs in a careful and prudent manner, that is, by whether he had been negligent and that whether he had in fact been negligent was not to be determined by whether he had made "the physical condition of the premises worse or . . . gave a deceptive appearance of safety" and, therefore, dissented. It was his view that the applicable principles of law were as expressed in Ambruster v. Levitt Realty & Investment Co., 341 Mo. 364, 107 S. W. (2d) 74; Lasky v. Rudman, 337 Mo. 555, 85 S. W. (2d) 501; Kennedy v. Bressmer, supra and Marks v. Nambil Realty Co., 245 N. Y. 256, 157 N. E. 129, and that the majority view conflicted with these cases. The dissenting judge, of necessity, must have thought both the defendant's negligence and the plaintiff's contributory negligence questions of fact to be resolved by the jury under all the evidence.

On December 1, 1936, Taylor leased to Bartlett, for a period of three years, the premises at 8033 Woodland in Jackson County. The building was made up of seven rooms used as a dwelling, a large room in the front of the building used as a grocery store and another room, adjoining the storeroom, built and used as a garage. The garage door, according to the plaintiff's evidence, was twelve feet square and weighed about 1000 pounds. The door was hung on a double track with two sets of swivel rollers and was opened by rolling it up and to the north on the track. Bartlett was not wholly satisfied with the arrangement of the building and desired certain alterations and so it was agreed, in the lease, that he, the tenant, should make the changes. The front of the building was to be set back four feet and

there was to be a partition between the storeroom and the garage. Bartlett was to make the changes at his expense and in exchange was to be excused from paying the first seven months' rent.

Bartlett made the alterations and after they were completed it was no longer possible to use the original mechanical device for opening and closing the garage door. In order to use the door Bartlett put a half inch eye bolt in the center and bottom of the door, bored a hole through a joist in the roof of the garage about four feet inside of and directly above the door and placed a loop of quarter-inch steel cable in the eye bolt and through the hole in the joist. A block and tackle with metal hooks on each end (designated a fence or wire stretcher by defendant's counsel) was hooked into or engaged in the loops of cable in the eye bolt at the bottom of the door and in the loop at the joist. The door was then raised and lowered by the block and tackle and held open by fastening the ropes after the door was raised.

After Bartlett had been in the premises about a year, using the door as he had fixed it in the meanwhile, Taylor made certain rather extensive repairs to the premises, particularly to the foundation and roof. Again according to the plaintiff's evidence, after the repairs to the foundation had been started, in September, 1937, Bartlett returned from a trip to the market and Taylor was in the garage talking to Oscar Tann, the man Taylor had engaged to make the repairs. According to Bartlett, Tann told Taylor that the wire or cable did not look safe—looked worn—and that he was going to fix it and Taylor told him to "go ahead and fix it." Bartlett then saw Tann with "a piece of insulated electric wire in his hand . . . and it looked like it was doubled up two or three or four or five pieces of wire . . . about a foot long in the whole thing when it was looped together." That night Bartlett looked in the garage to see that the doors were closed and observed that the electric wire he had seen Tann with was engaged in a loop in the eye bolt at the bottom of the door with the block and tackle hooked to it. Tann's work continued about six days and during that time Tann opened the door in the morning and closed it at night. Bartlett himself used the door "five or six days" after the foundation was completed and it was about thirty days after the electric wire had been inserted in the eye bolt that the door fell on Bartlett and injured him. .

On October 4, 1937, Bartlett and his daughter were carrying apples from a truck and storing them in the garage when the door fell and struck him on the head. After the door fell a piece of the broken electric wire was seen in the eye bolt and there were two pieces of broken wire on the floor. Bartlett's daughter took the piece of wire from the eye bolt, showed it to her father and it was produced at the trial.

Excerpts from the testimony of the plaintiff and his witnesses will more clearly present the respective contentions of the parties as to

the facts and the permissible inferences to be drawn from the evidence, as well as illustrate the legal principles involved. The following is from the cross-examination of Bartlett: "Q. You were an experienced workman? A. I was. Q. Experienced in carpenter work? A. I have built houses. . . . Q. You have done such work as hanging garage doors before? A. Yes, sir. . . . Q. And you made these changes in a workmanlike manner, in your opinion, is that right? A. Yes, sir. Q. And, of course, in attaching this block and tackle to the ceiling joists and to the door you were using some wire? A. Yes, sir. Q. And the wire that you used was of sufficient strength to hold the door both at the top and the bottom, is that right? A. Yes, sir. Q. You are a judge of the strength of wire? That was your judgment it was sufficient strength? A. Yes, sir. . . . Q. And, of course, you only used the wire of sufficient strength, is that right? A. Yes. Q. And this wire you put in was of sufficient strength? A. Yes, sir. Q. And accordingly you have some judgment of the strength of wire, haven't you? A. To a certain extent. . . . Q. What size wire is that Exhibit 4 here that you have identified, this thing? A. Oh, that looks like about a No. 10 wire, I should imagine. . . . Q. I say, is that about the ordinary sized copper wire that is enclosed within this type of insulation ordinarily? A. I think there are about four or five different sizes, I think from eighteen down."

From his re-direct examination: "Q. Mr. Bartlett, after this loop was placed in the door with the type of wiring you have described, identified as Plaintiff's Exhibit 4, Mr. Tann used the door every day, didn't he? A. Yes, sir. Q. Did you see anything particularly dangerous about it? A. No, I did not."

It should also be noted that Tann denied making any changes whatever in the door or its mechanism and stated that although he told Mr. Taylor it was a "makeshift and wasn't safe" Taylor told him that it was Bartlett's job to move the front of the building and he would neither fix nor pay for fixing the door. Taylor did not remember ever being told that the door was dangerous, never inspected it and did not authorize any repairs to it.

■ The principle which the appellant contends should govern this case was stated [847] by the majority of the court of appeals as follows: "The tenant must show 1. That *the premises were made more dangerous for the tenant.* (a) *By making the physical condition of the premises worse* or (b) *By giving the repaired premises a deceptive appearance of safety.* 2. That the tenant neither knew nor should have known of the danger, and 3. Relied upon the deceptive appearance of safety." The view that the landlord in voluntarily making defective repairs is not liable unless he has made the physical condition of the premises worse or unless he has, by the repairs, caused the premises to have a deceptive appearance of safety originated in

this state with Logsdon v. Central Development Assn., Inc., 233 Mo. App. 499, 123 S. W. (2d) 631, and is a paraphrasing and an adaptation of Section 362 of the Restatement Of The Law Of Torts and its appended comment.

In the Logsdon case a porcelain faucet handle crumbled in a tenant's hand as he attempted to turn. the faucet off. The lavatory was in .the tenant's quarters in an office building and the landlord had previously repaired a leaking faucet, after notice, but there was no evidence that the porcelain handle had been repaired. It is clear, as the court said, that there was no evidence that the landlord had notice or knowledge of any defect in the porcelain faucet at the time the quarters were rented to the plaintiff. As pointed out in Kennedy v. Bressmer, 154 S. W. (2d) loc. cit. 406, the Logsdon case is probably distinguishable on its facts in that there the landlord had not been asked to repair the faucet and, under the evidence, did not undertake to do so. While in the instant case, as in the Kennedy case, the landlord did undertake to repair, as the jury could find, the very thing which caused the injury and, we may assume, that the thing undertaken to be repaired was defective at the time the landlord undertook to repair it. That being the .fact the Logsdon ·case may be further distinguished, as will be pointed out later, on the basis of the theory upon which the plaintiff was forced to rely in order to make a submissible case or recover at all. But, regardless of these possible distinctions, the court stated the applicable principles to be as we have indicated. Furthermore, the principle announced in the Logsdon case was followed and applied in Davis v. Cities Service Oil Co., 131 S. W. (2d) 865, when an automobile fell from the lift for raising and lowering automobiles and injured the tenant's employee after, it was alleged, the landlord had attempted to repair it. And so, even though it is possible to distinguish the cases on their particular facts it cannot be denied but that the court applied, certainly in the instant case, the indicated rule in determining whether the landlord had been negligent.

In fairness to the Logsdon and Davis cases, but not to the majority opinion in the instant case, it should be noted that the quoted rule was preceded by this statement: "Where the landlord, whether obligated to do so or not, undertakes to repair the premises and, in doing so, negligently creates a defect or danger whereby the tenant, himself in the exercise of ordinary care, is injured, the landlord is liable. Byers v. Essex Investment Co., 281 Mo. 375, 219 S. W. 570."

It is our view that the latter statement is a more accurate and correct statement of the rule applicable to this case. In the first place, the condition or defect, if it was a defect originally, came into existence after Taylor leased the premises to Bartlett for a term of three years. That being the fact, Taylor was under no duty or obligation whatever to repair the door and up to that time was not

subject to liability for injury to the tenant, Bartlett, nor to anyone else for injuries due to the condition existing on the premises because the condition complained of came into existence after the tenant came into full possession of the premises. Section 351, Restatement Of The Law Of Torts; 32 Am. Jur., Secs. 657, 662; 1 Tiffany, Landlord & Tenant, Sec. 86, pp. 556-559. Though the plaintiff in the leading case of Glenn v. Hill, 210 Mo. 291, 109 S. W. 27, relied on a promise to repair and not on negligence this fundamental governing the relationship of landlord and tenant was correctly stated, 210 Mo. loc. cit. 296: ''There is no averment in the petition that under the contract of leasing the defendant agreed to repair, and in the absence of an agreement in the lease binding the landlord to put or keep the premises in repair, he is not liable in damages for failure to do so or for injuries sustained by the tenant by reason thereof.''

But the corollary of this fundamental is that if the landlord does undertake to make repairs, either voluntarily or [848] by covenant, he must exercise reasonable care in doing so and is liable to his tenant for injuries caused by his negligence or unskillfulness in making the repairs or in leaving the premises in an unsafe condition. 32 Am. Jur., Secs. 678-679, pp. 547-549; 1 Tiffany, Landlord & Tenant, Sec. 87 f(3), pp. 608-610; 36 C. J., Sec. 900, p. 217. See the annotations in 118 A. L. R. 425; 15 A. L. R. 971; 13 A. L. R. 837; 26 A. L. R. 1253; 52 A. L. R. 866; 11 L. R. A. (N. S.) 504; 34 L. R. A. (N. S.) 798 and 48 L. R. A. (N. S.) 917. ''While a landlord, in the absence of a contract to do so, is under no obligation to his tenant to make repairs or improvements on the demised premises, yet, if he voluntarily does so for his own or for the common advantage of both him and the tenant, *he must use reasonable care in doing so, and is liable for any injury caused by his negligence.*'' Bloecher v. Duerbeck, 333 Mo. 359, 367-368, 62 S. W. (2d) 553, 555. This case was followed and this was the rule applied when a porch railing gave way, injuring a tenant after the landlord had repaired it. Lasky v. Rudman, 337 Mo. 555, 85 S. W. (2d) 501. It was applied after a landlord attempted to repair a defective Electrolux refrigerator and it subsequently exploded injuring a tenant. Ambruster v. Levitt Realty & Investment Co., 341 Mo. 364, 107 S. W. (2d) 74. So too when the landlord's janitor defectively placed a screen in a window and the tenant's child was caused to fall it was said that ''. . . a landlord, undertaking to make repairs upon the demised premises, is liable upon making such repairs for an injury caused by his negligence or that of his servant. And he is liable notwithstanding the repairs were made gratuitously or without obligation.'' Shaw v. Butterworth, 327 Mo. 622, 628, 38 S. W. (2d) 57, 60. One of the leading cases is Vollrath v. Stevens, 199 Mo. App. 5, 202 S. W. 283. There the steps from a kitchen became shaky and the landlord's carpenter undertook to repair them. After they were repaired they appeared to be all right for some time

(nearly two years) "until about a week before the accident, when the steps began to slant down 'a little bit on the side.' " One day the steps gave way, injuring the tenant and the rule was applied though the defendant was given a new trial.

By no means are these all the cases in Missouri but they illustrate that the rule has always been that the measure of the volunteering landlord's liability for defective or improper repairs has been whether he exercised "ordinary care in respect of the undertaking he so voluntarily embarks upon" (Finer v. Nichols, 175 Mo. App. 525, 536, 157 S. W. 1023), that is, by whether the injury was proximately caused by his negligence. Are there any reasons why the rule should be changed or limited? None is suggested. There has been but little discussion of the theory of the landlord's liability (26 Mich. L. R. 260) and for the most part the rules are rather arbitrary. It should be borne in mind, in the first place, that the basis of the landlord's liability when he gratuitously but negligently repairs is determined by the law of torts and not by the law of contracts. Bohlen, Studies In The Law of Torts, p. 206. The landlord becomes liable because he has breached his legal duty to exercise due care. This fundamental is noted because it makes immaterial and excludes as a requirement of the rule those ideas which, basically, are a part of or emanate from the law of contracts. Bohlen, Studies In The Law Of Torts, p. 223, 225, 228. In Kennedy v. Bressmer, 154 S. W. (2d) loc. cit. 403, the landlord undertook to repair a defective porch post and it was then suggested that the court adopt the theory of the Logsdon case and require of the plaintiff before he could recover that he show "that the act of defendant in making the repairs created a danger not existing before, or aggravated the danger which already existed" but the court, instead followed Marks v. Nambil Realty Co., 245 N. Y. 256, 157 N. E. 129, in which, when the same suggestions were urged Mr. Justice CARDOZO said: "The landlord, though a volunteer in making the repairs, is liable, none the less, for negligence in making them. 'It is ancient learning that one who assumes the act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all. . . . ' A landlord in these circumstances is not charged with liability on the basis of the nonperformance of a voluntary promise. He is charged with liability, because, having chosen to perform, *he has thereby become subject to a duty in respect of the manner of performance.* . . . There is a suggestion, . . . that to make the landlord liable, the negligent repairs must have aggravated the defect, so that what was dangerous before became more dangerous than ever. We cannot yield assent to this restriction of the field of duty. The tenant [849] does not have to prove that by the negligent making of the repairs what was wrong has been made worse. *His case is made out when it appears that by reason of such negligence what was wrong is still wrong, though*

*prudence would have made it right."* This was the view chosen in Arizona and California when the same problem was presented to those courts. Olsen v. Mading, 45 Ariz. 423, 45 P. (2d) 23; Janofsky v. Garland (Cal.), 109 P. (2d) 750.

The landlord, it seems to us, has all the protection needed for he is not obligated, in the circumstances of this and similar cases, to undertake the repairs—it is only when he volunteers or otherwise undertakes to repair that the duty arises. Not only is there no apparent reason for further limiting his liability by the requirement of making the premises more dangerous or changing the physical condition of the premises for the worse or by giving a deceptive appearance of safety, but these requirements in themselves could only lead to confusion. There is the problem of what and when is the condition "more dangerous." It is possible that the repairs may change the physical condition of the premises for the better and yet the danger would be greater. Bohlen, Studies In The Law Of Torts, p. 225. It is our view that the requirement of the Restatement Of The Law Of Torts that the repairs must "make the land more dangerous for use" and its appended comment to that effect should not be adopted or followed. It necessarily follows that in so far as the Logsdon and Davis cases adopt that rule they are and should be overruled.

■ As applied to the facts of the instant case and the defendant's demurrers, these requirements being eliminated as prerequisites to liability, the only question is whether the evidence shows that Taylor or his employee exercised due or ordinary care in repairing the defective and dangerous door. It is implied and tacitly conceded by the appellant's argument and position in this appeal that the plaintiff's evidence, considered most favorably to the plaintiff, made a jury question of the defendant's negligence. In fact the majority of the court of appeals were of the opinion that the plaintiff's evidence was sufficient to support a finding that the defendant's repairs had made the condition of the premises worse and it is not disputed but that the door was defective when the repairs were undertaken. And, of course, if it was then defective and a hazard it was for the jury to say whether the defendant was negligent when Tann repaired the door by removing the quarter-inch cable and replaced it with the insulated electric wire and gave no warning or notice of the changed condition which one should reasonably have known was not safe.

■ Also in support of its demurrers the appellant cites Stoll v. First National Bank, 345 Mo. 582, 134 S. W. (2d) 97; Vogt v. Wurmb, 318 Mo. 471, 300 S. W. 278; Paubel v. Hitz, 339 Mo. 274, 96 S. W. (2d) 369 and other landowner-business invitee cases and asks that they be applied to this instance. His position is that the condition of the door, after it was repaired, was open and obvious, that the tenant was fully aware of it or had to be because he could and did see

it and, therefore, he was not entitled to recover. It is not necessary to use the analogy of the business invitee cases because there is a similar rule applicable to the relationship of landlord and tenant. "A lessor of land, who conceals or fails to disclose to his lessee any natural or artificial condition involving unreasonable risk of bodily harm to persons upon the land, is subject to liability . . . , if (a) the lessee does not know of the condition or the risk involved therein, and (b) the lessor knows of the condition and realizes the risk involved therein and has reason to believe that the lessee will not discover the condition or realize the risk." Sec. 358, Restatement Of The Law Of Torts; 1 Tiffany, Landlord & Tenant, Sec. 86(d). This principle is well recognized by the Missouri cases. See Mahnken v. Gillespie, 329 Mo. 51, 43 S. W. (2d) 797; Meade v. Montrose, 173 Mo. App. 722, 160 S. W. 11; Whiteley v. McLaughlin, 183 Mo. 160, 81 S. W. 1094 and the cases noted in the Missouri annotation to Sec. 358 of the Restatement Of The Law Of Torts. In the Logsdon case, it seems to us, the plaintiff was driven to reliance upon this principle. There was no evidence that the landlord had undertaken to repair the porcelain faucet and so the tenant was compelled to rely upon a concealed or hidden defect and when that was all that was left to him he was unable to prove that the landlord had any notice or knowledge of the defect, if one existed, and of course was therefore not entitled to recover. Byers v. Essex Inv. Co., supra; Deghan v. Doty (Mo.), 246 S. W. 922.

But the principle is not applicable in this case in measuring the nature and extent of the landlord's liability. The plaintiff does not allege nor rely upon a hidden or concealed condition as creating liability. The plaintiff, in his petition, described the door and stated that the defendant in repairing it "having placed said wire loop on said door . . . and in making such repairs to said premises, was under the obligation and duty to install a wire loop that would safely hold the door when suspended" but, he says, the defendant "negligently and carelessly failed to use wire of sufficient strength to hold said door suspended when opened, and . . . failed to construct and install a proper loop . . . and failed to warn plaintiff of the danger of said door falling after being suspended by the defective wire loop in question." In short, as we have indicated, the plaintiff relied upon the defendant's having breached his duty to exercise due care in making the repairs. And, as we have further indicated, his evidence on that issue made a submissible case. A further reason for liability on the part of the landlord when he voluntarily undertakes to repair is that in doing so there is at least an implied assurance in his repairing that it will be and was properly done and that the previous defective condition will be and was remedied. Kennedy v. Bressmer, supra; Bohlen, Studies In The Law Of Torts, p. 248; Kirshenbaum v. General Outdoor Adv. Co., 258 N. Y. 489, 180 N. E. 245. And the real issue in this case is whether there was evidence

of negligent repairing by the defendant. Ambruster v. Levitt Realty & Inv. Co., supra; Finer v. Nichols, supra.

The plaintiff's knowledge is of force in this case only in so far as it bears on his contributory negligence. 38 Am. Jur., secs. 184-187. As to whether Bartlett was contributorily negligent we have this as the case: He put the door in the condition it was first in and, therefore, whatever its condition then was he had full knowledge of it. Thereafter the landlord undertook, as the jury could find, to repair the door and the question is whether the tenant, at that time, that is after it was repaired, knew of its dangerous condition or the negligent manner in which it had been repaired—not of any latent or hidden defects—but of the negligence in its repair, if he did and then continued to use the door without the exercise of due care on his part he would be guilty of contributory negligence as a matter of law. Fabel v. Boehmer Realty Co. (Mo. App.), 227 S. W. 858; Ann. Cas. 1913C, loc. cit. 975. But the fact that he had some knowledge of the condition of the door did not preclude him from using it altogether nor necessarily make him guilty of contributory negligence as a matter of law. If the evidence was that he did have knowledge of the hazard complained of that would preclude a recovery by him. But, "if an ordinarily careful and prudent person in her (his) situation would have concluded that in the exercise of due care she (he) could ascend the steps in safety, she (he) had a right to rely on the implied assurance of the landlords that they were reasonably safe for that particular use." Lang v. Hill, 157 Mo. App. 685, 689, 138 S. W. 698. Though he may or should have some knowledge of the defective condition and repairs and should, therefore, have some apprehension of the hazard of using the door, yet he is not guilty of contributory negligence as a matter of law unless it can be said "that no reasonably prudent person would have done as he did under the circumstances." Cento v. Security Bldg. Co. (Mo.), 99 S. W. (2d) 1, 6. This has always been the rule applied when the defect or danger was in that part of the premises retained in the landlord's possession or control and we can see no reason why it is not also applicable when the landlord gratuitously undertakes to repair a portion of the premises not under his control. Roman v. King, 289 Mo. 641, 233 S. W. 161, 25 A. L. R. 1263; Kratz v. Kinney (Mo. App.), 41 S. W. (2d) 954; Brewer v. Silverstein (Mo.), 64 S. W. (2d) 289. With these two elements present, the implied assurance of safety by the landlord's repairs and some knowledge on the tenant's part of the condition, the question then is whether, under the evidence, we may say he was guilty of contributory negligence as a matter of law. 38 Am. Jur., Sec. 185.

It is true that Bartlett "rigged up" the original "contraption" as appellant calls it. He did not fix the door so that it would properly operate on the mechanical device originally intended for that purpose. He attached a block and tackle to quarter-inch steel cable in

an eye bolt at the bottom of the door and in the joist in the ceiling and, no doubt, it was not a very ingenious contrivance and it may be that it was as Tann said it was, dangerous. But it had been used for about a year and the steel cable had not broken and the thing complained [851] of by the plaintiff was not that the ponderous door did not operate properly or even without hazard but, as we have said, the negligence alleged was that the landlord, in repairing the door, removed the quarter-inch steel cable and replaced it with insulated electric wire. It is true Bartlett had considerable knowledge as a carpenter. He saw Tann with the electric wire and even saw the wire in the eye bolt on the door. He even knew that it was No. 10 insulated electric wire. But as to the specific danger and the act complained of as constituting negligence Bartlett said:

"Q. Did you see anything particularly dangerous about it? A. No; I did not."

Of course, this question and his answer may have been a conclusion but there was no objection to it and, anyway, is a different conclusion absolutely compelled from the facts. "Even if plaintiff had knowledge of the existence of the hole (and she testified that she had none), it cannot be held that the danger was such as would deter a person of ordinary prudence from continuing to use that portion of the yard, or that plaintiff was guilty of negligence, as a conclusion of law, in failing to avoid the hole under the circumstances present." Milton v. Holtzman (Mo. App.), 216 S. W. 828. "A plaintiff's knowledge of the physical characteristics of the offending instrumentality or condition does not, in itself, constitute contributory negligence. A voluntary exposure to known danger is an essential element of contributory negligence. Moreover, *it is the appreciation of, or the opportunity to appreciate, the peril in an instrumentality or condition, rather than a knowledge of its physical characteristics, that bars a plaintiff of recovery for negligence. It does not follow necessarily, from proof that the plaintiff had knowledge, as of a physical fact, of the place or appliance by means of which he sustained the injury complained of, that he must have appreciated the danger to which he was exposed therefrom.*" 38 Am. Jur., Sec. 188. Can we say that the plaintiff had more appreciation of the peril than he says he did? We may be subject to the charge of credulity in not saying so as the plaintiff had considerable knowledge of the physical facts, but considering that he had some right to rely on the assurance of safety implied in the repairs we cannot say that he had such comprehension of the risk of injury involved in using the door with its defective repairing that reasonable minds could draw but the one conclusion that he fully appreciated the danger and proceeded in utter disregard of the consequences. The conclusion and inference from the evidence is also permissible that he did not appreciate the peril to which he was subjecting himself, in using the door and, therefore, whether he was

contributorily negligent was a matter to be resolved by the jury. Vollrath v. Stevens, supra.

The judgment, therefore, is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.