## MARY A. VOLLRATH, Appellant, v. ELLEN STEVENS, Respondent.

Kansas City Court of Appeals, February 18, 1918.

1. **LANDLORD AND TENANT: Damages: Personal Injuries.** A landlord is under no obligation to make repairs to premises let, in the absence of a written agreement so to do, but if he voluntarily undertakes to make them he is bound to exercise ordinary care to see that the work is not negligently done and that they will last a reasonable length of time under the circumstances.

2. ————: ————: **Defective Repairs: Misfeasance.** When a landlord voluntarily assumes to repair defective premises, he takes upon himself the burden to use ordinary care to make such repairs in such a manner that they will last a reasonable length of time and in discharging such duty, if he fails to remove material that should have been removed to make the place reasonably safe, he is guilty of misfeasance and not non-feasance.

3. ————: ————: **Question for Jury.** Where a tenant from month to month had been such for a great many years and the landlord makes repairs that lasted two years, it was a question for the jury whether the landlord had discharged his duty to the tenant in making repairs that lasted only two years.

4. ————: **Independent Contractor: Damages.** If a lessor undertakes to have repairs made when he has not covenanted to do so, a duty is cast upon him to see that the repairs are made so as not to injure the tenant and the rule concerning independent contractors has no application, the accident having happened long after the repairs were made and accepted by the landlord.

5. **INSTRUCTIONS: Landlord and Tenant: Repairing Premises.** An instruction which told the jury that if materials used by a landlord in making repairs to rented premises were unsuitable, insufficient and defective and that the landlord failed to replace any weak or rotten supports and flooring with reasonably safe supports, the tenant might recover damages received when the steps and flooring of the premises gave way two years after the landlord had voluntarily made repairs, was erroneous because the landlord was only bound to use ordinary care in doing these things.

Appeal from Jackson Circuit Court.—*Hon. I. N. Watson,* Special Judge.

AFFIRMED.

*T. A. Mastin* and *Paul R. Stinson* for appellant.

*Scarritt, Scarritt, Jones & Miller* for respondent.

BLAND, J.—This suit was brought on May 26, 1916, by plaintiff, a tenant, against defendant, her landlord for personal injuries alleged to have been suffered by plaintiff on the 27th day of March, 1911, through the negligence of the defendant. There was a verdict and judgment for eighty-one hundred and twenty-five ($8125) dollars in favor of plaintiff which she voluntarily remitted to the sum of seventy-five hundred ($7500)

dollars. Thereafter the court sustained defendant's motion for a new trial, assigning as a reason therefor "that the court erred in giving instruction No. 1 on behalf of the plaintiff, the court being of the opinion that the case should have been submitted to the jury on the theory that the defendant had agreed to keep the premises in repair as alleged in the petition, and because the case should not have been submitted on the theory that defendant was negligent in making the repairs."

The parties concede that plaintiff's petition proceeds upon two theories: First, that the landlord contracted to keep the premises in repair and failed to do so; second, that the landlord volunteered to make repairs and was negligent in doing the work. Plaintiff submitted her case to the jury on the latter theory and abandoned the former. We are only concerned with that theory of the case upon which it was tried. The question for our decision being whether plaintiff made out a case on the theory submitted by her to the jury.

Plaintiff had been a tenant from month to month of the defendant for nineteen years prior to the accident. The tenanted premises was an old frame house with a summer kitchen on the rear. The latter was enclosed and was a part of the house proper. There was a door connecting the kitchen to the house but the kitchen floor was somewhat lower than the door. Reaching from the kitchen floor to the door was a pair of steps. The kitchen was used in summer for cooking and at times in the winter for boiling dinners. In June, 1909, the steps had become very shaky and the floor beneath shaky and when the steps were walked upon the floor sagged. Plaintiff complained to defendant's agent of this condition and he made an examination of it and told plaintiff he would have a new floor and steps put in and that he would have the floor and supports fixed so that they would be in a safe condition. The agent sent a carpenter to the house who tore up the floor and made other repairs that plaintiff could not see as

she was engaged at the time in nursing a sick son. After the carpenter had finished the work the floor was no longer shaky or sagging and it and the steps appeared to plaintiff to be all right until about a week before the accident when the steps began to slant down "a little bit and on the side." "It was hardly perceptible."

At the time of the accident plaintiff was walking from the main part of the house down the steps, intending to go to the summer kitchen. When she placed her weight on the second or lower step "the floor gave down," "and the steps went down," causing plaintiff's foot to slip and she fell and broke her back. The steps rested upon the floor and were nailed to what was described as a baseboard placed against the main part of the house under the door. The floor rested upon stringers and the stringers were nailed to three props which rested on the floor of the cellar, there being a cellar under the entire house, including the summer kitchen. An examination after the accident showed that the steps had pulled away about four inches from the baseboard, and that the baseboard was in a decaying condition and rotten, and the nail holes therein were rotten and larger than the nails. Plaintiff's daughter went into the cellar and there found that the floor and stringers were rotten and covered with mold and they pulverized in the daughter's fingers. The support which was directly under the steps was rotten and in a slanting position, indicating that it had given away. The support was so rotten that plaintiff's daughter could scrape the rot loose with her finger nails. The steps overhead were green with rot. The floor under the steps had sagged down as much as two inches as far as to the door. The steps themselves were in good condition except the ends were decayed some.

The carpenter who made the repairs in 1909 was not a witness, but there was evidence that when the carpenter repaired the steps he used part new and part old flooring. The old steps were put back after the repairs were made underneath, as the steps were in

good condition at that time. There was no direct evidence as to the condition of the baseboard, flooring, stringers and supports immediately after they had been repaired in 1909. However, there was the expert testimony of a carpenter who examined the premises shortly before the trial and who testified that new or first-class boards if in a dry place would last from twenty-five to thirty years. Plaintiff contends that as the materials were so rotten in 1911, or two years after the repairs were made, that, in view of the testimony that new or first-class boards in a dry place would last for twenty-five or thirty years, there is an inference that the material used in 1909 in making the repairs was defective and that defendant's agent should have known of its defective condition.

The landlord was not under any obligation to make these repairs in 1909, but having voluntarily entered upon the task of making them, she was bound to exercise ordinary care to properly make them. But the fact that she assumed to make the repairs placed no further obligation upon her than to use ordinary care in making them so that they would last a reasonable length of time. The fact that she assumed to make the repairs did not impose upon her the duty to continue making them, as her obligation was not the same as that of a master toward a servant. Plaintiff seems to contend that it was. In the case of master and servant the master is under the obligation to keep the premises in a reasonably safe condition at all times, whereas the duty upon a landlord who voluntarily undertakes to make repairs is only to see that the work be not negligently done, and if the landlord uses ordinary care to repair the premises to last a reasonable length of time he discharges his full duty.

We cannot say as a matter of law that because the boards used and the materials left and not disturbed by the landlord in making these repairs lasted two years after the repairs were made the landlord fulfilled her full duty toward the tenant. In this case it was a question for the jury to determine whether the land-

lord used ordinary care to repair the premises so that they would last a reasonable length of time under all the circumstances including the circumstance that the tenancy was one from month to month only. The house was an old one and the landlord was not under the duty to use new or first-class boards in making the repairs or to remove material that would last a reasonable length of time under all the circumstances. Because a portion of the premises got out of repair it was not the duty of the landlord to reconstruct out of new material that part of the premises. It was natural for the landlord under the circumstances to use old boards found around the premises to make the repairs but, of course, she could not use for that purpose boards that were not reasonably sound and sufficient, in view of the circumstances. It was not sufficient to show by expert testimony that new or first-class boards in a dry place would last twenty-five to thirty years. In the first place the landlord was not under the duty to furnish new or first-class boards or to remove old material that would last a reasonable length of time. The expert testimony should have related to the length of time reasonably sound and sufficient boards and material would last under the circumstances rather than new or first-class boards. There was no evidence that reasonably sound or sufficient boards and material would not rot in two years in the situation these boards and material were in. There is nothing in the evidence to show the degree of dryness or dampness that was present that might tend to disintegrate the boards. It is true the summer kitchen was enclosed and for that reason was protected from the elements but there was evidence that there was a cellar beneath the summer kitchen and there was no evidence as to the question of dryness or dampness of this cellar and the supports which were in it and the stringers and flooring above, which constituted its roof. But the fact that the steps themselves were in good condition, although old steps, and that the decay was under the steps and in the cellar and that the stringers were moldy and green

with rot suggests that the boards were not in a dry place but that much dampness was present. Of course, in considering the question of the degree of care required of the landlord in leaving old material and in furnishing reasonably sound or sufficient boards, all of the circumstances surrounding the premises should be taken into consideration, including the question of damp premises. The landlord should be required to use ordinary care in repairing the premises so that they would last a reasonable length of time in view of the dampness present, if any.

For these reasons we think that plaintiff failed to make out a prima-facie case, that is, she failed to show that the boards were in a rotten condition and not reasonably sound and sufficient two years prior to the accident, and that a reasonable inspection of the materials used at that time on the part of the landlord or her agent would have disclosed such a condition. The landlord was not under the absolute obligation to use reasonably sound and sufficient boards and in leaving old material in making the repairs but she was only obliged to use ordinary care in the selection of such boards. Plaintiff not only failed to show these things but there is a strong inference in the evidence that the landlord did use ordinary care in making these repairs, for the parts when repaired appeared to plaintiff to be perfectly strong and safe and they lasted nearly two years after the repairs were made. It cannot be said that because the steps gave away two years after the repairs were made that there is a presumption that they were negligently made. If the steps had given way a short time after the repairs were made, there might be such a presumption, but there can be none when they gave way after the expiration of so long a time, especially in view of the testimony of the expert witness to the effect that boards that were not new or in first-class condition, that is to say, old boards, might have been good two years before and not be good at the time of the accident.

As this case must be retried, it is necessary for us to pass upon the other points made by the defendant.

Defendant attacks ·plaintiff's instruction No. 1 on the ground that it submitted to the jury that defendant negligently failed to *replace* the weak or rotten supports to said steps and the flooring upon which they rested, with reasonably safe supports . . . so that after said repairs, if any, were made, said steps, supports and flooring *remained* and were unsafe.

It is urged by defendant that under this instruction the jury might have found for plaintiff on account of defendant's non-feasance rather than her misfeasance. It is well established in cases like this that the landlord must be guilty of misfeasance and not non-feasance before he is rendered liable. [Finer v. Nichols, 172 Mo. App. l. c. 536.] However, when defendant voluntarily assumed to repair the defective premises she took upon herself the burden to use ordinary care to repair the premises so that they would last for a reasonable length of time, and in discharging this duty to repair if she failed to remove rotten boards, floors, supports and other material that should have been removed to make the place reasonably safe, she was guilty of misfeasance and not non-feasance. [Finer v. Nichols, supra, l. c. 538.]

We think that plaintiff's instruction No. 1 is erroneous for the reason that it casts a burden upon the landlord which she was not required to assume. As has already been stated, the duty of the landlord in voluntarily assuming to make these repairs was to use ordinary care in making them so that they would last for a reasonable length of time under the circumstances. The instruction leaves out altogether the question of the care required of the landlord in making the repairs. It told the jury that if the materials used in making the repairs were unsuitable, insufficient and defective and that the landlord failed to replace any weak and rotten supports and flooring with reasonably safe supports, that plaintiff might recover, while the only duty upon the landlord was to use ordinary care

in doing or failing to do these things. On the next trial this instruction should be recast so as to conform to the law as stated in this opinion.

The evidence shows that when plaintiff complained of the defective condition of the premises in 1909, defendant's agent sent a carpenter to make the repairs and defendant says that as the carpenter furnished his own materials and used his own method in doing the job, that he was an independent contractor and for that reason if the result of his work was that the repairs were not properly made, the defendant is not liable. This contention of the defendant is not well taken. If the lessor undertakes to have repairs made when he has not covenanted to do so, a duty is cast upon him to see that the repairs are made so as not to injure the tenant and the rule concerning independent contractors has no application.

The judgment is affirmed. All concur.