**HOME OWNERS' LOAN CORPORATION v. HUFFMAN.**

No. 12108.

Circuit Court of Appeals, Eighth Circuit.

Jan. 13, 1942.

Rehearing Denied Feb. 2, 1942.

Charles M. Miller, of Kansas City, Mo. (S. D. Frampton, of St. Louis, Mo., on the brief), for appellant.

Hale Houts and Price Wickersham, both of Kansas City, Mo. (William S. Hogsett and Henry Depping, both of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This was an action to recover damages on account of personal injuries suffered by appellee as the result of a fall down a basement stairway in a dwelling house, at Kansas City, Missouri. We shall refer to the parties as they appeared in the trial court. The premises had been leased by the defendant to one George H. Sweeney as a dwelling house and were occupied by him as such at the time plaintiff received her injuries. Plaintiff was employed by Sweeney's wife as a beauty operator and was a member of his household when she received her injuries.

It is alleged that on or about July 16, 1938, Sweeney offered to rent the premises from the defendant upon condition that defendant would repair the steps to the basement and put them in a reasonably safe condition for use; that defendant accepted this offer and agreed to make said repairs and thereafter proceeded so to do; that prior to the negotiations for the lease of the premises, one of the treads of the steps was defective in that it was insecure and the outer portion thereof likely to tip when a person stepped on or put his weight upon it "by reason of not being securely nailed to the stringer underneath it;" that in the performance of the repairs defendant negligently "failed to repair said tread" and to make the steps reasonably secure. It is then alleged that plaintiff, as an employee of Sweeney, stepped and rested her weight upon said insecure tread, which gave way, causing her to fall down the steps, inflicting serious injuries upon her. It is also alleged that plaintiff's injuries were directly caused by the negligence of the defendant in that it "failed to repair said tread or remedy said defective and dangerous condition of said tread;" that in the performance of the repairs, defendant negligently made the tread more dangerous for the use of the tenant Sweeney and his employees by giving the steps and said tread a deceptive appearance of safety. It is then alleged that the defective condition was concealed and not easily discernable by the tenant or the plaintiff, that it was unknown to them but known to the defendant at the time it agreed to rent the premises to Sweeney and at the time Sweeney was placed in possession of the premises; that the defendant failed to inform Sweeney, or the plaintiff, of the defective condition, but negligently assured Sweeney that the premises and said steps

had been repaired and were reasonably safe. The nature and extent of plaintiff's injuries are then described in the complaint.

Defendant, admitting jurisdictional allegations and admitting that it had rented the premises to Sweeney, denied any agreement to make repairs on the step or steps involved in the accident, and denied that it made repairs on the step involved and in effect denied all allegations of negligence on its part; alleged that plaintiff was guilty of contributory negligence and specifically challenged the right of plaintiff to maintain an action in tort.

The action was tried to the court without a jury and at the close of all the evidence defendant moved for findings in its favor and for judgment of dismissal upon grounds elaborately set out in its motion. This motion was denied and the court entered findings in favor of the plaintiff, assessing her damages at $20,000, and from the judgment entered thereon defendant prosecutes this appeal.

Defendant seeks reversal on substantially the following grounds: (1) the court erred in refusing the motion of defendant for findings in its favor and judgment of dismissal; (2) the trial court erred in making certain findings requested by plaintiff because they were not supported by the evidence; (3) the trial court erred in entering its conclusions of law; and (4) the trial court erred in refusing the conclusions of law requested by defendant.

■ The action is not for breach of a covenant to repair, but sounds in tort. That being true, it is not material what, if any, promises or agreements were made by defendant to the lessee as to the making of repairs. It is well established by the decisions in Missouri that a landlord can not be held liable in tort for personal injuries received by a tenant or one on the premises in his right as a result of the landlord's breach of his covenant to repair. Kohnle et al. v. Paxton, 286 Mo. 463, 188 S.W. 155; Lahtinen v. Continental Bldg. Co., 339 Mo. 438, 97 S.W.2d 102; Norris v. Walker et al., 232 Mo.App. 645, 110 S.W. 2d 404; Davis v. Cities Service Oil Co. et al., Mo.App., 131 S.W.2d 865; Logsdon v. Central Development Ass'n, 233 Mo.App. 499, 123 S.W.2d 631.

■ While the landlord may not be held in a tort action for damages for his failure to make repairs whether he has covenanted so to do or not, yet it is well established by the decisions in Missouri that if he undertakes to repair, he is required to exercise ordinary care in making such repairs and is liable for injuries caused by his negligence or unskillfulness in making them. Lasky v. Rudman, 337 Mo. 555, 85 S.W.2d 501; Vollrath v. Stevens, 199 Mo.App. 5, 202 S.W. 283; Shaw v. Butterworth, 327 Mo. 622, 38 S.W.2d 57. The defendant did not construct the dwelling house here involved, but acquired it through foreclosure proceedings. When thus acquired by defendant it was confessedly in need of substantial repairs to place it in habitable condition. With that in view, defendant had the premises inspected by an experienced carpenter who made report embodied in a typewritten specification of repairs which in his judgment should be made. This had been done before any negotiations leading up to the lease were begun, and during these negotiations defendant's agent displayed to Sweeney these specifications which showed what repairs were in contemplation. The specifications made no mention of repairs to the basement stairway, except that it called for a repair of "the landing on the basement stairs, replacing all broken and missing parts," and this repair was in fact made, and there is no claim of negligence with reference to making it. The court found, and the evidence is without dispute, that the defendant did not repair at any time the fourth tread or step, or the horses underneath, upon which the tread rested but that the only repair made by the defendant "was in the landing at the bottom of the stairs in question." The court also found "that Sweeney saw the specifications of repairs to be made on the house during the negotiations for renting the house." It thus appears without dispute that the defendant disclosed to Sweeney during the negotiations for leasing the property that so far as the stairway was concerned, it proposed to repair only the landing at the foot of the stairway. It is therefore clear that Sweeney, who was himself a civil engineer, knew that defendant did not propose to make any repair of the fourth tread of the stair, and, in fact, did not undertake to make any repair on that tread. If, therefore, there was any negligence in the matter of the repairing of the stair, it was in failing to repair the fourth tread, rather than in a negligent repairing of it. It is contended that the defendant was negligent in making its inspection, but it

was under no obligation to make an inspection. It was not an insurer of the condition of the premises, but the lessee takes the premises, in the absence of warranty, fraud, or misrepresentation, as he finds them, with all existing defects which he knows or can ascertain by reasonable inspection. The liability of the defendant in undertaking to make repairs was only for its active and direct negligence with regard to the repairs it undertook to make. To render it liable, its active and direct negligence must have been the real cause of the injury.

It is urged by plaintiff that the decision of the Supreme Court of Missouri in Lasky v. Rudman, supra [337 Mo. 555, 85 S.W. 2d 503], sustains her theory of liability. That was a tort action, wherein a verdict was returned for the defendant. The trial court granted a new trial and the defendant appealed. The question presented was whether the trial court erred in granting a new trial on the ground that it had erred in giving certain instructions at the request of the defendant. In holding that one of the instructions given was prejudicial, the court said: "There is no dispute about the fact that the railing fell. The evidence favorable to plaintiff tended to show that the ends of the railing were decayed and rotten and that defendant attempted to repair same. If defendant did attempt to repair the railing, it was her duty to exercise reasonable care to discover and repair the decayed and rotten condition of the railing so as to make it reasonably safe."

It is noted that in the Lasky case the defendant undertook to make repair of the very instrumentality which caused the injury. There was an actual negligent repair from which injury directly resulted. But here it is conclusively established, not only that the defendant actually limited its repair to the bottom landing, but that Sweeney was advised that its repair would be so limited. In the other cases cited, on some of which the trial court relied, the landlord actually made repairs and in doing so was negligent. For instance, in Shaw v. Butterworth, supra, the landlord negligently installed a screen which fell out and inflicted personal injuries. In Norris v. Walker, supra [232 Mo.App. 645, 110 S.W. 2d 408], cited by defendant, the court referred to Shaw v. Butterworth, but observed that, " * * * but in that case the opinion of the court rests upon the negli-

gence of defendant in installing a window screen which he assumed (and had agreed) to install. He was there liable, under all the decisions, for negligently performing an act; but he would not have been liable in tort for a total failure to perform the contractual obligation."

We think it clear that under the decisions in Missouri, a tort action can only be sustained against a defendant landlord who actually makes a repair and as a result of his negligence in so doing injury results.

In Byers v. Essex Inv. Co., 281 Mo. 375, 219 S.W. 570, 571, plaintiff's wife fell from the balcony of her apartment, receiving injuries resulting in death. The accident was caused by the breaking of a railing against which she leaned. The railing was in five sections of about seven feet each. In August, 1915, the landlord undertook to make repairs on the porch railing, and the accident happened June 21, 1916. No repairs had been made on the section which gave way, but repairs had been made on the other sections. The court said: "The agreed statement does not show a repairing of the rail section which gave way. The facts are not such as to bespeak the only negligence for which respondent could be held liable."

In Davis v. Cities Service Oil Co., supra [131 S.W.2d 870], the Missouri Court of Appeals considered the question of the liability of a lessor for personal injuries alleged to have been suffered by reason of the lessor's failure to make repairs. In the course of the opinion, the court, among other things, said: "The petition does not allege that the servant of the tenant was injured by reason of a defect or dangerous condition caused by the repairs attempted by defendant, but shows that the servant of the tenant was injured by reason of the defects which existed at the time the premises were leased by defendants Campbell prior to the time repairs were undertaken by the landlord. It follows that the second count in the petition fails to state a cause of action based upon negligent repairs by the landlord, and since, as we have pointed out that there is no action in tort based upon a breach of a covenant to repair, it follows that the trial court properly sustained the demurrer to this count of the petition."

The repair on the landing at the bottom of the stairway, of course, had nothing to do with the fourth tread, nor did the re-

pair of the landing in any way contribute to plaintiff's injuries. So far as the fourth tread was concerned, it was in exactly the same condition at the time of the accident as it was before the repairs were made.

This being a tort action, recovery could only be had for injuries resulting from negligent acts of the defendant, and we think that negligence must in the instant case be confined to any acts of attempted repair of the fourth tread.

But if, for the sake of argument, it be assumed that the defendant might be held for any failure to exercise ordinary care in the repair of the entire stairway, we do not believe there is substantial evidence to sustain the judgment. As has been noted, this dwelling house was not constructed by the defendant but was acquired by it under foreclosure of mortgage. It took the precaution of employing an expert carpenter to inspect the premises with a view of determining what repairs were reasonably necessary to place the property in habitable condition. This carpenter inspected the premises and made his report. The repairs were made in accordance with this report, and after they had been completed, the defendant took the further precaution of having the house again inspected to see that the repairs as called for in the specifications had in fact been made. It appears that the stairway was constructed of very substantial materials. The treads consisted of plank of about two inches in thickness and the supporting timbers referred to in the record as horses, were of like thickness. There was in the fourth tread a season crack extending the entire length of the tread, near the middle. This condition had existed for many years. The crack was one that occurred from the seasoning of the lumber. The tread itself was produced at the time of the argument before us and we inspected it. Similar treads are often composed of two or even three parts, so that there was nothing necessarily dangerous in the fact that this plank had cracked in seasoning and consisted of two parts. It was not loose. The crack was as apparent to Sweeney as it was to the inspector. The tread had been in use apparently for years without becoming loose and it had been used by plaintiff and the members of the Sweeney household, including the plaintiff, for at least five months preceding the accident. These treads were painted at least at the ends where the nails had been driven in, and there had been no nails driven into this tread after it had been painted. After the accident occurred and the tread was removed, it appeared that the nails which fastened the part of the tread which turned over under plaintiff's weight as she was attempting to replace a jug weighing some eight or ten pounds upon a shelf next to the stairway, to the supporting horses, were inadequate. At the west end of the front part of the tread was a 16-penny nail and an 8-penny nail, but at the east end there were two 8-penny nails. In the final analysis, the cause of the accident is traceable to the fact that this tread was not securely nailed to the supporting stringers or horses beneath it, and not to the fact that the tread had in it a season crack; in fact, plaintiff in her complaint does not claim that the step was dangerous because the tread contained this season crack, but because "of not being securely nailed to the stringer underneath it." The nail heads were all covered with paint and had been for years. The tread was not loose and there was no way of determining from an inspection that the nails which secured it to the underlying supports were 8-penny nails instead of 16-penny nails.

Not having constructed the building, defendant was not charged with notice of this latent defect, and without notice, either actual or constructive, it could not have been guilty of negligence for failing to repair it. The inspector was not put on notice of any inadequacy in the nailing of this tread, and he was not required to pull the nails or tear the entire stairway down for the purpose of determining how long the nails were. There was no substantial evidence that the defendant failed to exercise ordinary care in attempting to ascertain the condition of this fourth tread, nor in failing to repair it.

As plaintiff's accident did not result from any actionable negligence on behalf of the defendant, its motion for findings and judgment in its favor should have been granted. The judgment appealed from is therefore reversed and the cause remanded, with directions to set aside the judgment and grant the defendant a new trial.