### FRANKLIN v. COLUMBIA TERMINALS CO.

### No. 12892.

Circuit Court of Appeals, Eighth Circuit.

May 9, 1945.

Rehearing Denied July 19, 1945.

Chelsea O. Inman, of St. Louis, Mo., for appellant.

Richard D. Shewmaker, of St. Louis, Mo. (Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

Franklin sued Columbia Terminals Company in negligence, for injuries received when he fell down an elevator shaft in a building owned by Columbia in St. Louis, Missouri. The jury returned a verdict for Columbia, and Franklin has appealed. Error is assigned on the court's instructions.

Franklin was an employee of J. C. Penney Company, which was lessee from Columbia of the third and fourth floors and most of the first floor of the building. The remainder of the first floor and all of the mezzanine and second floors were retained by Columbia for its own purposes.[1] The elevator shaft was located in the space covered by Penney's lease on the various floors. It housed a freight elevator, of which Penney was to have the exclusive use,[2] except that Columbia was to be permitted to use the elevator, on occasions convenient to Penney and with Penney's consent at the time, to haul goods stored on the mezzanine floor,[3] and Columbia further was to have such access as

---

[1] According to the evidence, there was "a concern that had an office on the second floor in connection with [Columbia's] business office", but it had no right to use the elevator, and, other than this, Penney and Columbia were the only occupants of the building.

[2] The elevator was one of five located in Penney's space, to all of which it had the same right.

[3] There was one elevator located in the space on the first floor that Columbia had retained, but this elevator did not serve the mezzanine floor.

might be necessary to enable it to maintain the elevator in good order and repair. Penney had agreed to make certain initial alterations and improvements in adapting the space to its business purposes, but these did not involve the elevator. Except for this work, the lease contained a provision requiring Columbia to "keep all parts of the demised premises, [and] the appurtenances thereto, * * * in good order and repair", and to "comply with all * * * laws and ordinances, * * * present or future, affecting the demised premises". In addition, there was a rider to the lease, which provided that "The Landlord shall, at its own cost and expense, provide * * * all labor and material to maintain the elevators and other mechanical equipment in said building in good order and repair."

Penney furnished its own operator for the elevator, except when Columbia was permitted to use it. There was evidence, however, that when the operator was not on duty or at hand, Penney allowed any of its employees to use and operate the elevator in going to or from the floor of their work. Franklin was employed on the third floor, and, on the occasion of the accident, he came to work before the elevator operator had gone on duty. He went to the shaft on the first floor, and, believing, according to his testimony, that he saw the elevator through the gate, in the somewhat dim light, he raised the gate, which he assumed could not be raised unless the elevator was at the floor, and stepped into the shaft. The elevator was at another floor, and he accordingly fell to the bottom of the pit.

The elevator system was equipped with an interlocking device on the shaft at each floor, which was supposed to cause a steel rod to slide out onto the gate and lock it when the elevator left the floor, and thus prevent the gate from being raised until the elevator was returned. An ordinance of the city of St. Louis, in effect at the time of the making of the lease and of the accident, provided that "All shaftway doors or gates [on freight elevators] shall be equipped with a device herein called an 'interlock' * * * which shall prevent the opening of any shaftway door or gate

unless the elevator platform is at rest within six inches above or within six inches below the landing, except when an automatic leveling device is used * * *", and "The functioning of any shaftway door or gate interlock shall not be dependent on the action of a spring or springs in tension * * *", and "Any force or forces used to perform any interlocking function shall be so arranged that their failure to cause the interlocking action will prevent the movement of the elevator car."

Franklin contended on the trial that Columbia was negligent in having permitted the elevator system to be equipped with an interlocking device that was dependent on the action of a spring or springs in tension, in violation of the city ordinance; in having failed to maintain the existing interlock in proper operative condition, so that it would not be possible to raise the gate when the elevator was not at the floor, as required by the city ordinance; and in having failed to repair the worn and defective interlock, when it knew of its condition, or in the exercise of due care could and should have known, in time to have prevented the accident.

In addition to Franklin's testimony as to how the accident occurred, there was evidence on the part of other witnesses tending to show that, when the interlock was examined after the accident, it did not work and the gate could be raised while the elevator was away from the floor; that the functioning of the interlock was dependent on the action of a spring in tension,[4] within the prohibition of the city ordinance; that this spring was corroded and "would not close", when it was tested by one of the witnesses after the accident; that the corrosion had resulted from "lack of oil"; that the condition was one which had developed, not momentarily, but over a period of time, and which was apparent on an examination and inspection; and that the gate could not have been raised, in the manner Franklin did, if the interlock had been in proper condition at the time of the accident.

At the trial, Franklin sought to rely on two theories of liability under Missouri law. His first theory was that Columbia had retained such possession and control of

---

4 The testimony in Franklin's behalf on this point seems a bit confusing and not wholly convincing, in relation to the evidence adduced by Columbia, but we cannot say, as Columbia attempts to argue, that it was so utterly lacking in probative value that the trial court had no right to submit it to the jury or that the jury would not be entitled to believe it.

the elevator itself that it owed the general duty to any tenant of the building, and to any employee or other invitee of a tenant, to have made the interlocking device comply with the requirements of the city ordinance, and, outside the ordinance, also to have exercised due care to keep the interlocking device that was on the elevator in safe working condition and repair. See Lahtinen v. Continental Building Co., 339 Mo. 438, 97 S.W.2d 102, 106; Lambert v. Jones, 339 Mo. 677, 98 S.W.2d 752, 755; McCloskey v. Salveter & Stewart Inv. Co., 317 Mo. 1156, 298 S.W. 226, 234. Beyond the general duty of repair resting upon a landlord as to such parts of the premises of which he has retained possession and control in whole or in part, Franklin also relied upon the theory that Columbia had specifically agreed in Penney's lease to keep the elevator in good order and repair and had affirmatively entered upon the performance of this task, and that it therefore was bound to have made the interlocking device comply with the requirements of the city ordinance, and, outside the ordinance, also to have exercised due care to keep the interlocking device that was on the elevator in good order and repair. See Orcutt v. Century Bldg. Co., 201 Mo. 424, 99 S.W. 1062, 1067, 1068, 8 L.R.A.,N.S., 929; Bartlett v. Taylor, 351 Mo. 1060, 174 S.W.2d 844, 847, 848; Lasky v. Rudman, 337 Mo. 555, 85 S.W.2d 501, 502. Both of these theories of landlord liability under Missouri law have been generally discussed by us in Home Owners' Loan Corporation v. Huffman, 8 Cir., 124 F.2d 684, certiorari denied 316 U.S. 681, 62 S.Ct. 1268, 86 L.Ed. 1754.

The trial court undertook in its instructions to submit both theories of liability to the jury on the evidence. Franklin concedes here, though he did not do so in the trial court, that his evidence as to possession and control of the elevator was not such as would impose a general duty on Columbia, in its mere capacity as landlord, to keep the elevator in repair, and that he therefore was not entitled to have had that theory of liability submitted to the jury. It is the instructions upon his second theory of liability about which he complains. He contends that these instructions were erroneous, (1) because they did not make clear to the jury that, even though Columbia had no right to any possession or control of the elevator as such, its entry upon the task, under its lease obligation, of keeping the elevator system in good order and repair was sufficient to give rise to a liability for any failure on its part to exercise due care in performing the task; and (2) because they permitted the jury to determine as a question of fact whether Columbia actually had—in the trial court's language—"undertaken to perform the work of inspecting, maintaining, and repairing the elevator * * * and keeping all mechanical equipment thereof in good repair and order", when the undisputed evidence, including the testimony of Columbia's own witnesses, showed that throughout the lease period Columbia had undertaken and was attempting to perform the task of inspection, maintenance and repair, pursuant to its lease obligation.

Franklin excepted to the instructions at the time, basing his exceptions on "the refusal of the Court to instruct the jury that the fact that Columbia * * * had undertaken the work of repairing and maintaining the elevator and its safety devices gave rise to a duty * * * to comply with the ordinance in evidence; and in instructing the jury that, in determining the liability of the defendant, the jury must find that defendant retained the control, some control or right of control, it being the plaintiff's theory that it is immaterial as to whether it had control or not, that it is sufficient to show that the defendant had undertaken to perform the work of keeping these safety devices in repair", and that, having thus undertaken the task of maintenance and repair, "it owed the plaintiff the duty of performing it right."

On Franklin's first contention, the element of possession or control may perhaps, in some parts of the instructions, have been a bit artificially overlapped and ambiguously accentuated in relation to the second theory of liability, to serve as a clear guide for the jury. The jury, at any rate, appeared to have been somewhat confused as to the actual import of the instructions on the question of control, for, after it had deliberated an hour and a half, it returned to the courtroom and the foreman stated to the court: "There seems to be some question as to this point about the control or right of control having been retained or not retained, and whether such control or right of control would have to be retained or not retained a hundred per cent." But whether the instructions, when read as a whole, were so confusing on the question of control, in relation to Franklin's second theory of liability, as to be preju-

dicial, we shall not attempt to consider, for we must in any event grant a new trial on Franklin's other contention, and such overlapping confusion, if any, as may have existed on the question of control, in relation to his second theory of liability, is not likely to occur again, since he now concedes that he had no right to go to the jury on his first theory of liability, in which the general question of control was primarily involved.

■ On Franklin's second contention for reversal, as indicated above, we are obliged to hold that, on the evidence in the record, the trial court erred in allowing the jury to determine, as a question of fact, whether Columbia actually had "undertaken to perform the work of inspecting, maintaining, and repairing the elevator * * * and keeping all mechanical equipment thereof in good repair and order". The court should have instructed the jury that the evidence showed as a matter of law that Columbia had actually entered upon the performance of the task which it had agreed to do in the lease. This would leave as the only questions which the jury was required to determine, in relation to Franklin's second theory of liability, whether the interlocking device was of a kind that was forbidden by the city ordinance, or whether Columbia had failed to exercise due care in the performance of its task of inspecting, maintaining and repairing the existing interlocking device, and, if either of these grounds of negligence was found to exist, whether such negligence was the proximate cause of the accident, when considered in connection with the instruction given on the question of contributory negligence.

The evidence on behalf of Franklin showed that, all during the period of Penney's lease, Columbia had "made repairs to the elevator". Columbia's manager testified, as a witness for Columbia, that throughout the lease period it had employed an elevator maintenance man, who "inspects, oils and greases these elevators every Saturday". He admitted, in answer to a question on cross-examination, that it was the duty of this maintenance man "to look after these elevators and inspect them at regular intervals, and see that all the safety devices were in proper order and condition". Penney's manager, who too was Columbia's witness, similarly stated that "Columbia Terminals Company did

* * * all the repairing and maintaining [of the elevator] at its own expense, and that had been true all of the time the Penney Company occupied the portions of the Columbia Terminals Building up to the time Franklin was hurt, and is still true." There was no evidence to the contrary.

On this undisputed evidence, there clearly was no basis for any finding that Columbia had not "undertaken to perform the work of inspecting, maintaining, and repairing the elevator * * * and keeping all mechanical equipment thereof in good repair and order", and it therefore was prejudicial error to leave the jury free to make such a finding, as the instructions did.

■ Columbia seeks to escape the error in the submission of this question to the jury, by asserting that the evidence did not show "that defendant ever attempted to repair, or did anything to, the interlock." But the evidence which we have set out above leaves no room for any such technical avoidance. It specifically shows that Columbia undertook to inspect the elevator system every Saturday, to oil it and make any necessary repairs, and to "see that all the safety devices were in proper order and condition". The interlocking device manifestly was part of the safety devices. If Columbia's employee, in making his inspection of the elevator system, overlooked the interlocking device, or for some reason chose to pass it by, this would in the situation constitute misfeasance under Missouri law.

As was said in Orcutt v. Century Building Co., 201 Mo. 424, 447, 448, 99 S.W. 1062, 1067, 1068, 8 L.R.A.,N.S., 929, "When it undertook * * * to do * * * a particular work, and after it entered upon the performance of that work, any act which it did whether by omission or commission, was misfeasance. After making this contract, had it stood aloof and refused to [undertake the task] and, in so doing, thereby failed to do something which resulted in injury to a third person, it would not have been liable, because we would thus have mere nonfeasance. But, after it assumed its [task], and thereby commenced to do the thing it contracted and agreed to do, then * * * acts of omission or commission constitute misfeasance, or a failure to properly do the things which it had in the line of its duty commenced to do." See

also Lambert v. Jones, 339 Mo. 677, 98 S.W. 2d 752, 758.

The situation here is, of course, not like that in Home Owners' Loan Corporation v. Huffman, 8 Cir., 124 F.2d 684, where the owner of property had simply agreed and assumed to make certain specified repairs in accordance with the list which it had submitted to the tenant, and where the defect claimed to be responsible for the accident was not within the repairs which it had agreed or undertaken to make.

Columbia has argued that the judgment is in any event entitled to be sustained, because the evidence shows that Franklin was guilty of contributory negligence as a matter of law and therefore could not recover. On the record, however, the question of Franklin's contributory negligence was not one of law, but one of fact for the jury, as the trial court held. It appears to be the rule in Missouri that, while a passenger cannot walk blindly into an elevator shaft, he is not necessarily negligent, where the condition is one of neither brightness nor darkness, but of dimness, and is such as might cause an ordinarily prudent person to make only a hasty or cursory examination and from such an examination he could reasonably be led to believe that the elevator was there. In such a situation, the question of contributory negligence is usually for the jury. Aiken v. Sidney Steel Scraper Co., 197 Mo.App. 673, 198 S.W. 1139, 1140; Ditsch v. Kansas City Power & Light Co., 233 Mo.App. 1163, 128 S.W.2d 1055, 1058.

In the present case, there was evidence from which the jury could have found that Franklin looked into the elevator shaft as he approached it; that the lighting condition was dim but not dark; that there was sufficient light so that he might reasonably have believed that he could and did see the outline of the elevator cage, and that the elevator gate therefore could be raised; and that his belief that the elevator was standing at the floor and his right to rely on that belief were confirmed and strengthened by the fact that he was able to raise the gate. On all these circumstances, it cannot be said as a matter of law that Franklin failed to conduct himself as a reasonably prudent man would have done in the same situation. Cf. Unrein v. Oklahoma Hide Co., 295 Mo. 353, 244 S.W. 924, 926, 927.

The judgment is reversed and the cause is remanded for a new trial.

On Petition for Rehearing.

Columbia charges in a petition for rehearing that we have decided the appeal on a question that never has been in the case. That might well be just cause for complaint, if it were a fact—but it is not.

Franklin's petition was originally framed on the theory that Columbia had retained control of the use and operation of the elevator and therefore owed the general duty as owner of the property to use due care to inspect and keep the elevator in proper condition and repair. On the trial, however, the theory of Columbia's liability, from having actually entered upon the task of inspecting and undertaking to make any necessary repairs to the elevator system, in performance of the lease covenant which it had made with Penney Co. as tenant, was developed from the evidence of the witnesses for both parties, the evidence having been received without objection or limitation of purpose in its admission.

The trial court accordingly felt that the situation entitled and required it to give instructions on the issue, which it did. Columbia did not make any claim of surprise or then contend that the question had never been in the case, but by its exceptions to the instructions objected on the merits that "such inspecting, maintaining, and repairing did not constitute the kind of control which would make the defendant responsible."

On the appeal here, Columbia again attempted to carry its banner against the question on its merits, its contention being, as indicated in our original opinion, that negligence could not be predicated on the evidence produced, because it was not specifically shown "that defendant ever attempted to repair, or did anything to, the interlock."

It is therefore a bit surprising, on all these proceedings, now to have the charge made for the first time, in a petition for rehearing, that no such issue has ever existed in the case. The situation plainly is within Rule 15(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the holdings in Lientz v. Wheeler, 8 Cir., 113 F.2d 767, 769, Low v. Davidson Mfg. Co., 7 Cir., 113 F.2d 364, 367, and Continental Illinois Nat. Bank & Trust Co. v. Ehrhart, 6 Cir., 127 F.2d 341. We would have been obliged so to rule had Columbia attempted to make the contention initially in the argument of the appeal, instead of answering the question on its merits, as it did.

In the circumstances shown by the record, the trial court had a right to submit the issue to the jury, and it was our duty, as in any other case, to test whether the issue was submitted properly, especially since both parties in the situation here had argued the question to us solely on the merits. The fact that Franklin's petition has never been formally amended is of no consequence in the circumstances of the situation, in view of Rule 15(b). Such amendment as may be desirable in connection with a new trial can be made in the trial court, when the case is remanded.

Columbia has attempted also to read into our opinion a purported recognition of a right in Franklin to recover for a breach of the lease covenant between Columbia and Penney Co. The action is, of course, and could only be one in tort, for Columbia's negligence or failure to exercise due care in keeping the elevator in proper condition, when it had entered upon that task. No liability to Franklin could exist merely because of a breach of the lease. But it certainly was competent to permit the covenant of the lease to be received and considered in relation to the scope of the inspection and repair work which Columbia was actually undertaking to perform, especially in view of the testimony of Columbia's manager that it had entered upon the performance of all of the duties resting on it under the lease to keep the elevator system in good order and repair.

The petition for rehearing is denied.