Donald **STEWART**, a Minor, by and Through Donald Stewart, Sr., His Father and Next Friend, Appellant,

v.

Joseph **ZUELLIG** and Catherine Zuellig, Respondents.

No. 47483.

Supreme Court of Missouri,

Division No. 1.

June 13, 1960.

Louis Beck, Douglas MacLeod, St. Louis, for appellant.

Schwartz, James & Sweet, Harry M. James, St. Louis, Joseph Nessenfeld, St. Louis, of counsel, for respondents.

DALTON, Judge.

Action for $50,000 damages for personal injuries alleged to have been sustained by plaintiff, a 29-months-old child, by reason of defendants' alleged negligence in repairing a rear porch causing plaintiff to fall to the sidewalk below. At the close of plaintiff's evidence, the court directed a verdict for defendants and judgment was entered thereon. Plaintiff has appealed. The sole issue is whether or not the court erred in directing the verdict for defendants.

Plaintiff resided with his parents in a rented second floor apartment at 2900 North Twenty-Second Street in the City of St. Louis. The apartment was owned by defendants. Plaintiff's parents rented the apartment in the summer of 1955, when plaintiff was about three-months-old. The premises consisted of three rooms, a kitchen, a bedroom and a living room, the rooms being in a line, with the bedroom in the middle. Entrance to the apartment was by a stairway leading to the kitchen. Immediately adjacent to the rear of the living room was a small porch which faced the back yard. The right side of the porch, as one leaves the living room, is approximately eight inches inside the building line next to the public sidewalk. This porch was solely appurtenant to the particular apartment. No one else had access to it or the right to use it. It was too small to be used for other than storage purposes. Plaintiff's parents kept a broom, a mop, a bucket, a clothes basket and other similar household items on the porch. Access to the porch could be had only through the doorway from the living room. There were two doors in this doorway, one a permanent type which opened inwardly and the other a screen door which opened out onto the porch. The screen door was kept latched, the latch being sufficiently high so that plaintiff's mother was required to reach up for it.

The porch was about 18 feet above the ground. It was approximately 3 feet wide and 6 feet long and was supported on the rear wall of the building by two iron braces or brackets. When plaintiff's parents rented the premises, the porch was enclosed on all sides, except the side formed by the building wall, by a three foot railing or porch banister, consisting of a top railing and two three-inch boards below, so spaced that there was a space of 14 or 15 inches between them. The railing and boards extended from the building wall to the right of the apartment rear door out to posts at each of the far corners of the porch and back to the building wall to the left of the rear living room door.

In the summer of 1956, when plaintiff started to walk and became very active, his father took some boards from the back yard and used them to provide a third row of slats on the left side of the porch and on the side facing the back yard. He testified that his reason for putting up these additional boards was to narrow the space between the slats, being fearful that plaintiff might get out on the porch and maybe fall through. He did not put an additional board on the right or street side of the porch because he didn't have enough material available. After plaintiff's father finished the work of putting on the new horizontal boards, the openings between

each row of slats on the left and far side of the porch did not exceed six inches in width, but the width of the opening on the right side remained unchanged.

In February or March, 1957, defendants, at the request of plaintiff's parents, caused some repair work to be done on the parch. The work done consisted of reinforcing the porch floor and placing side braces or structural supports to the upright corner posts, which had been insecure. After this work was finished, plaintiff's father examined it and found the porch, the railing and upright posts solid and secure. Defendants did not install any additional slats in the porch banister or change the position of the existing slats or railings. The only physical change in the design or appearance of the porch resulted from the work done by plaintiff's father in the summer of 1956, when he put on the additional boards on two sides of the porch. After the boards were added by plaintiff's father and after the repairs to the porch were made by defendants, the 14 or 15 inch opening between the two slats on the right-hand or street side of the porch remained in exactly the same form it was in when the premises were rented. The top of the slat or board immediately below the 14 or 15 inch opening was 9 to 10 inches above the porch floor.

About 8 a. m. on August 5, 1957, plaintiff's mother was at home with her three children. Plaintiff, the oldest, was in the living room when his mother unlatched the screen door and went out on the porch to get a mop. Her testimony was that she "always locked the door to the porch," except during times when she would run inside to get something and run right back onto the porch. There is no evidence that she did or did not latch the screen door after obtaining the mop. She then went to the kitchen to warm a bottle for her youngest child. At that time, plaintiff was in the living room and the inside back door was partly open, but the screen door was closed. About five minutes later, when plaintiff's mother was going to give the bottle to the baby, she heard a child moaning or groaning, and after looking in the bedroom and living room, she went out on the porch and saw plaintiff lying on the sidewalk, about two or three feet out from the right side of the porch. His face was scratched and he seemed to be injured, so he was taken to the hospital at once.

There was evidence that plaintiff was a little over two feet tall, his legs were about one foot long or slightly longer. His father in June, prior to the occurrence, had observed that plaintiff had difficulty in stepping up a step eight to ten inches high.

No direct testimony was offered concerning plaintiff's alleged fall, or as to how he sustained his injuries. Apparently there were no eyewitnesses. One of the hospital records recited that plaintiff fell from a second story window. Plaintiff sustained a skull fracture. X-rays revealed a linear fracture extending from the region of the left orbit through the frontal bone and parietal bone into the posterior parietal region just above the posterior fontanel, and other injuries. There was no definite evidence of any depression of the fracture fragments. Plaintiff returned home from the hospital on August 8, 1957. It will be unnecessary to further review the evidence.

At the close of plaintiff's evidence, defendants moved for a directed verdict on the ground that plaintiff had failed to prove actionable negligence on the part of the defendants; that the evidence was insufficient to show that plaintiff's injuries were caused by defendants' negligence; that no submissible case was made; and that the evidence was insufficient to support a verdict for plaintiff without resort to guesswork, speculation and conjecture. As stated, the motion was sustained and judgment entered for defendants.

. Appellant's brief, under "Points Relied On," has stated only two abstract principles of law with certain supporting authorities, but without any reference to how these abstract principles of law apply to the facts of this case. There is no statement as to

what actions or rulings of the court are claimed to be erroneous or as to why it is contended the court was wrong in any of its rulings. See Supreme Court Rule 1.08(a) (3) and (d), applicable when the brief was prepared, and Civil Rule 83.05(a) (3) and (e), V.A.M.R. Respondents have made no request that the appeal be dismissed for this violation of our rules, but instead have pointed out that the record is short and only one question could be presented, to wit, the submissibility of plaintiff's case. Respondents have briefed the appeal on its merits and, in effect, ask a ruling on that basis.

■ The record tends to show that the trial court sustained defendants' motion on the theory that there was no adequate showing of proximate cause, however, if the motion for a directed verdict was properly ruled, the reason assigned is immaterial. Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054, 1062; Brown v. Moore, Mo.Sup., 248 S.W.2d 553, 556(4).

Appellant argues that a submissible case was made for the jury, because the defendants "made inadequate repairs * * * neglected to do what obviously needed doing" and were guilty of negligence, since "they should not have left the large opening at the street end of the porch, an opening through which a small child could readily fall."

■ The first abstract statement of law in appellant's brief under "Points Relied On" and the supporting authorities are as follows: "Although there is ordinarily no duty on the part of the landlord to repair the demised premises, if he undertakes the work he must perform it properly, and improper or inadequate repairs which result in injury to the tenant or members of his family subject the landlord to liability to the person so injured. Lasky v. Rudman, 337 Mo. 555, 85 S.W.2d 501, 503(4, 5); Shaw v. Butterworth, 327 Mo. 622, 38 S.W.2d 57, 60(1-6); Vollrath v. Stevens, 199 Mo.App. 5, 202 S.W. 283; Kennedy v. Bressmer, Mo.App., 154 S.W.2d 401."

The rule is stated and many authorities are reviewed in Bartlett v. Taylor, 351 Mo. 1060, 174 S.W.2d 844, 847, where the court said: " * * * if the landlord does undertake to make repairs, either voluntarily or by covenant, he must exercise reasonable care in doing so and is liable to his tenant for injuries caused by his negligence or unskillfulness in making the repairs or in leaving the premises in an unsafe condition." And see Byers v. Essex Inv. Co., 281 Mo. 375, 219 S.W. 570; Bloecher v. Duerbeck's Estate, 333 Mo. 359, 62 S.W.2d 553, 555, 90 A.L.R. 40; Home Owners' Loan Corporation v. Huffman, 8 Cir., 124 F.2d 684, 686; Huffman v. Home Owners' Loan Corporation, 8 Cir., 150 F.2d 162, 163; Gas Service Co. v. Helmers, 8 Cir. 179 F.2d 101, 104; 32 Am.Jur., Landlord and Tenant, Sections 679 and 682; 52 C.J.S., Landlord and Tenant. § 417(c) (2), page 43; American Law Institute's Re-Statement of the Law of Torts, Sec. 362.

A further rule is well settled: "The liability of a landlord who undertakes to and does make repairs or improvements on the demised premises is only for his active and direct negligence with regard to the subject matter of his undertaking. His negligent act must be the real cause of the injury, and it is for that alone that he is liable." 32 Am.Jur., p. 551, Landlord and Tenant, Section 682. And see Lasky v. Rudman, supra, 85 S.W.2d 501, 503; Lahtinen v. Continental Building Co., 339 Mo. 438, 97 S.W.2d 102, 106; Grimmeissen v. Walgreen Drug Stores, Mo.App., 229 S.W.2d 593, 598; Home Owners' Loan Corporation v. Huffman, supra, 124 F.2d 684, 687. Liability is for misfeasance and not for nonfeasance. Lasky v. Rudman, supra; Vollrath v. Stevens, supra; Finer v. Nichols, 175 Mo.App. 525, 157 S.W. 1023, 1025.

The words "unsafe condition" as used in the statement of the rule in Lasky v. Rudman, supra, means unsafe for the purposes for which the premises were intended to be used. Kennedy v. Bressmer, supra; Home Owners' Loan Corporation v. Huff-

man, supra. Plaintiff's evidence shows that the porch, in question, was too small to sit out on or place chairs on. It was not used for such purposes, but only for the storage of household equipment, as stated.

The cases relied upon by appellant state the general rule, but each of the cases relied upon is distinguishable upon its own particular facts from the facts in this case. In the Lasky case, [85 S.W.2d 501, 503] the court said: "There is no dispute about the fact that the railing fell. The evidence favorable to plaintiff tended to show that the ends of the railing were decayed and rotten and that defendant attempted to repair same. If defendant did attempt to repair the railing, it was her duty to exercise reasonable care to discover and repair the decayed and rotten condition of the railing so as to make it reasonably safe." In that case the plaintiff, a tenant of defendant, was injured when the porch railing gave way and precipitated her from the second floor porch to the ground below. No such facts appear in this case.

In the Butterworth case, [38 S.W.2d 57, 61] the court said: "Clearly in this case plaintiff's mother during the rental negotiations advised the defendants that she had small children, and demanded the placing of screens in the windows to prevent the children falling thereout. The defendants promised to put them in and this promise became a covenant of the rental contract. It is evident, we think, from the negotiations and the season of the year, that the mother's primary purpose in demanding and desiring the screens was the protection of her little children. That the evidence tends to show that defendants fully understood such purpose, we think is plain." No such contract or facts appear in the present case, where the question of repair of the rickety condition of the porch arose long subsequent to the rental agreement and the repairs actually made were voluntarily made and limited in extent as shown by plaintiff's evidence.

In the Vollrath case, [202 S.W. 283, 285, 286] the facts were that: "After the car-

penter had finished the work the floor was no longer shaky or sagging, and it and the steps appeared to plaintiff to be all right until about a week before the accident, when the steps began to slant down 'a little bit and on the side.' 'It was hardly perceptible.'

"At the time of the accident plaintiff was walking from the main part of the house down the steps, intending to go to the summer kitchen. When she placed her weight on the second or lower step 'the floor gave down,' 'and the steps went down,' causing plaintiff's foot to slip, and she fell and broke her back."

The court said: "In this case it was a question for the jury to determine whether the landlord used ordinary care to repair the premises so that they would last a reasonable length of time under all the circumstances, including the circumstance that the tenancy was one from month to month only. The house was an old one, and the landlord was not under the duty to use new or first-class boards in making the repairs or to remove material that would last a reasonable length of time under all the circumstances. * * * However, when defendant voluntarily assumed to repair the defective premises she took upon herself the burden to use ordinary care to repair the premises so that they would last for a reasonable length of time, and in discharging this duty to repair, if she failed to remove rotten boards, floors, supports, and other material that should have been removed to make the place reasonably safe, she was guilty of misfeasance, and not nonfeasance."

In the Kennedy case [154 S.W.2d 401, 406], a tenant of a second-floor flat called the landlord's attention to the fact that a corner post at the head of the stairway of a rear porch had become loose and wobbly, and the landlord sent a carpenter who put three or four nails into the rotten wood of the post, leaving the post still somewhat loose, and thereafter when tenant used the post as a means of support, it gave way and tenant fell downstairs and was

injured. The court said: " * * * defendant had undertaken to repair the very post which gave way and caused plaintiff to fall. It was in a dangerous condition when defendant undertook to repair it, and the very purpose of the undertaking was to remedy that dangerous condition. Such undertaking by defendant was in itself an assurance that the repairing was properly done so as to remedy the dangerous condition, but defendant so negligently did the work of repairing that the post was still left in its dangerous condition." No such facts appear from the record in this case.

■ It is apparent that the cases relied upon by appellant are not controlling under the facts shown by plaintiff's evidence. The question presented is whether the facts shown bring plaintiff's case within the rule of law relied upon. We think they do not. Only one of the cases referred to above seems particularly applicable to the facts of this case. It is relied upon by respondents.

In the case of Home Owners' Loan Corporation v. Huffman, supra, 124 F.2d 684, 687, the plaintiff, a tenant fell on the fourth step of a stairway on the rented premises. The court said: "If, therefore, there was any negligence in the matter of the repairing of the stair, it was in failing to repair the fourth tread, rather than in a negligent repairing of it. * * * The liability of the defendant in undertaking to make repairs was only for its active and direct negligence with regard to the repairs it undertook to make. To render it liable, its active and direct negligence must have been the real cause of the injury." The court held that no case was made for the jury and a judgment for plaintiff was reversed and the cause remanded. And see Huffman v. Home Owners' Loan Corporation, supra, 150 F.2d 162.

No question as to any contractual obligation is involved in the present case. It is apparent that the porch from which it is alleged the plaintiff fell was designed and constructed for the sole and exclusive use of the tenants of the apartment; and that to all intents and purposes it was a part of the demised premises. It was in the exclusive possession and control of the tenants who were plaintiff's parents. The only repairs made by defendants were to the porch floor to strengthen it and to secure the corner posts which supported the railings and slats. No repairs, alterations or changes were made by defendants in the plan or design of the porch. The railings, boards and slats enclosing the porch and the spaces between the slats were not altered or changed in any way. Not only were no repairs made with reference to these parts of the porch, but none of them broke, came loose, or caused or contributed to plaintiff's fall, even if we assume that he fell through the opening between the slats on the right-hand side of the porch.

The fact that no changes had been made by defendants in the plan or design of the porch and that no slats had been added or removed was apparent and open to observation at the time plaintiff's parents examined the porch after the repairs were completed. The porch floor, the corner posts and the railings were then solid and secure. Assuming that plaintiff fell from the porch and fell through the 14 or 15 inch space between the two slats on the street or right-hand side of porch, the fall and injuries were not occasioned by any direct or active negligence of defendants in the making of the repairs, which as stated, consisted only of the reinforcements to the floor and the bracing of the corner posts. No misfeasance or actionable negligence was shown or could be inferred from plaintiff's evidence and no case was made for the jury on the issue of defendants' negligence. It is unnecessary to consider the second abstract statement in appellant's brief with reference to the proof of proximate cause by inferences from circumstantial evidence. The court did not err in directing a verdict for defendants.

The judgment is affirmed.

All concur.